(No. 14251.—Reversed in part and remanded.)

ELIOT GILBERT, Appellee, *vs.* T. C. GILBERT, Appellant.

*Opinion filed October 21, 1922—Rehearing denied Dec. 7, 1922.*

1. DIVORCE—*equities of the case must be considered in settling property rights.* In settling property rights and decreeing alimony in a divorce proceeding the first question for consideration is the equitable rights of the parties in the property, real or personal, held and owned by them, and each should remain vested with the title to property acquired by individual effort, but if property held by one has been accumulated by both it should be divided according to such equity as exists between them.

2. SAME—*when alimony should be confined to money allowance—gifts.* Where the wife brings no property to the husband by the marriage and has in no way contributed to the accumulation of any property during the marriage, on a final decree of divorce in her favor the wife is entitled to alimony only in a money allowance payable at stated intervals, and if the husband, while they were living together agreeably, has given the wife title to any property without consideration, the court, in settling property rights in the divorce proceeding, may be warranted in divesting the wife of such title or in making an equitable division between them.

3. SAME—*what determines amount of alimony.*  The amount of alimony to be allowed a wife on her securing a divorce depends not only upon the question of the misconduct of the husband, but also upon the matter of their property and income, their ages, health, past and present habits, social conditions and circumstances, and whether or not there are children dependent on either of them; and the sum allowed for alimony may vary from a sum sufficient to meet the actual wants and necessities of the wife to a third or more of the husband's income.

4. SAME—*method of computing alimony where both parties have income.*  In determining the amount of alimony due a wife upon her securing a divorce where both have an income, the method of computation is to add the wife's annual income to the husband's, consider what, under all the circumstances, should be allowed her out of the aggregate, then from the sum so determined deduct her separate income, and the remainder will be her proper allowance.

THOMPSON, C. J., dissenting.

APPEAL from the Circuit Court of Edgar county; the Hon. WALTER BREWER, Judge, presiding.

GEORGE W. BRISTOW, and WILBER H. HICKMAN, for appellant.

STEWART W. KINCAID, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On April 20, 1921, Eliot Gilbert, appellee, filed her bill in the circuit court of Edgar county against her husband, T. C. Gilbert, appellant, for separate maintenance, charging extreme and repeated cruelty and that he had made false accusations of infidelity against her. The bill also prayed that two deeds executed by appellee to appellant be set aside and canceled and that an accounting be had for rents. Appellant answered the bill, denying the charges of cruelty and accusations of infidelity, denying that the deeds to the real property were fraudulently obtained, and denying that she had any interest therein. He also filed a cross-bill charging appellee with extreme and repeated cruelty and of having attempted to send him to an insane asylum, and praying for a decree of divorce. Appellee filed her answer to

the cross-bill denying all the charges therein. A trial was had before the court without a jury, and pending the trial the appellee amended her bill, praying for a divorce on the grounds charged in her original bill and that the deeds aforesaid be set aside and for an accounting as to rents. After the court had sustained a demurrer to the amended bill appellant filed an answer denying the charges therein contained. Upon a hearing the court entered a decree granting appellee a divorce, set aside and canceled the two deeds and that appellant pay appellee $535 for rents, but declined to enter any further decree for alimony and dismissed the cross-bill for want of equity. This appeal followed.

Appellant and appellee were married on March 16, 1897. They had three children, namely, Stanton, of the age of twenty-three years, Ruth, of the age of twenty-one years, and Floyd, eighteen years of age, all of whom are self-supporting and in no way dependent upon their parents. Prior to June, 1920, there had been no serious differences between appellee and appellant. In August, 1920, as testified to by appellee, appellant, who had been sick for some time, became very cross and irritable, called her ugly names, told her that she was not a decent woman, kicked over the table, broke the dishes and grabbed her by the throat and choked her severely until Ruth helped her to get away from him. This testimony was corroborated by Ruth. During the following winter appellant struck her with his fist, made marks on her arm where he grabbed her, and told her that their three children were not his. There were no witnesses to this latter act of cruelty. She further testified that on April 8, 1921, appellant came home and told her that he wanted a property settlement; that she had ruined his life; that she was not a decent woman and was nothing but an old whore; that he would give her the place where they lived, and that that was more than she deserved. Her son Stanton was in the next room, and hearing his father make said statement he came into the room and said to his father

that he should not call his mother such names. Thereupon her husband and son got into a fight and she threw her arms around her husband's neck to protect her son; that Floyd and Ruth came into the room to protect Stanton from his father, and a general fight ensued. They were all down on the floor, and appellant choked her and struck her and before all of their children charged her with infidelity. She was corroborated in this testimony by the children, and was further corroborated in a way by Kate McCulloch, who saw the latter part of this difficulty. The evidence further tends to show that appellant had constantly, for a year or more before their final separation, charged his wife with infidelity.

We do not deem it necessary or profitable to go into further details of the evidence bearing upon the question of the right of appellee to a decree for divorce. After carefully considering the whole evidence we are satisfied that it supports the decree in that regard and that the decree should be affirmed.

Appellee charges in her bill that appellant secured the deeds to the two pieces of real estate by fraud; that he represented to her that she was only signing a mortgage to secure $700 with which to purchase an automobile for the family, and that relying upon such false statement she signed the two deeds believing that she was only signing a mortgage. The weight of the evidence does not sustain her charge, but shows that she knew the difference between a deed and a mortgage and that she carefully read the deeds before she signed them. Besides, the evidence should not be weighed and considered as if the parties were to continue to live together as husband and wife. In settling the matter of alimony and property rights between husband and wife where a divorce has been granted, the title to real or other property will be vested in the one or the other, according to the equities of the case, without reference to the question how the title may have been acquired by the one

or the other,—that is, whether by fraud or by gift at a time when they were living together in the manner that husband and wife should live. In settling the question of alimony it has been frequently ruled by this court that where the wife brings no property to the husband by their marriage and the husband has acquired the title to no property rightly belonging to the wife as her separate property or with funds properly belonging to the wife as her property, and the wife has in no way contributed to the accumulation of any property during the marriage, upon a final decree of divorce in favor of the wife she is only entitled to alimony in a money allowance payable at regular stated intervals, as by the month, by the quarter or by the year. In such a case the court would be warranted by such a settlement in divesting the wife of the title to any property conveyed to her as a gift during the marriage and while living agreeably with her husband and in dividing it between them equitably. The court in this case found against appellee on her charge of fraud but set aside the deeds in question on the ground, simply, that no consideration was paid to the wife therefor. As a matter of fact, the evidence tends to show that appellant had previously deeded or caused to be deeded to her the two pieces of real estate as a gift and without any express valuable consideration. The court's action in setting aside the two deeds resulted clearly from a misapprehension of the equities of the parties and the law of the case.

The real estate in question consisted in the first place of the home or residence of the parties, of the value of about $3000, and in the second place of a business property renting for $55 a month, of the value of about $6000. The evidence tends to show that the two pieces of property were acquired with appellant's money and labor. This was all the property he had except a certificate of deposit for $2000,—the proceeds of the sale of an automobile and of some other real estate, and except, also, the furniture and furnishings

in their home.  By the decree for alimony the appellee was given about $10,000 worth of property, while appellant was allowed to retain for his portion of the property only the $2000 certificate of deposit, less $535 thereof decreed to the wife.  Under the evidence the only possible equity that appellee had in any of this property or money was the bare fact that as wife she may have assisted in accumulating the property.  None of it was ever obtained by her, so far as the record shows, with her money, or by appellant with any of her money or the proceeds of sales of any of her separate property.  The decree for alimony cannot, therefore, be sustained upon any theory of law or equity.  It is stated by appellant in his brief and argument that appellee, in addition to the property decreed her, holds in her own name real estate of the value of about $2000.  The evidence does not warrant this conclusion, but the court so limited the evidence on the question of the property rights and holdings of the parties that this further fact of her holdings may be established on a reconsideration of the case.

The evidence in the record establishes the fact that appellant is past the age of fifty years and is in very poor health, suffering from a complication of diseases which renders him unable to work and earn a living until he can be restored to health, if ever.  The amount of alimony to be allowed a wife depends not only upon the question of the misconduct of the husband, but also upon the matter of their property and income, their ages, health, past and present habits, social conditions and circumstances, and upon the further question whether or not there are children dependent upon one or both of them for support and the amount required therefor by each party.  The amount allowed a wife for alimony varies from a sum sufficient to meet the actual wants and necessities of the wife, to a third or more of the husband's income.  Where both have an income, the method of computation of what is a proper allowance is to add the wife's annual income to her husband's,

consider what, under all the circumstances, should be allowed her out of the aggregate, then from the sum so determined deduct her separate income, and the remainder will be her proper allowance. (*Decker* v. *Decker,* 279 Ill. 300.) The first question to settle in a case allowing alimony is the equitable rights of the parties in the property, real or personal, held and owned by them. If the wife or husband has property in his own name, acquired solely by him and in his own right and to which the other has not in any way contributed, then it is the right of that party to remain vested with such title. If there is property held by one of them which has been accumulated by the joint efforts of the two or by the funds of both, then such property should be divided according to such equity as exists between them. If either party has by gift been invested with property acquired entirely by the one making the gift, then the court may properly re-vest the title in the party making the gift, without regard to the question of the gift being voluntary or otherwise, or make an equitable division between them. (*Decker* v. *Decker, supra.*) After the equities of the parties in all the property belonging to them have been adjusted in the manner aforesaid, then the amount payable to the wife in money, if any, may be determined by the rule aforesaid, after taking into consideration the value and income of the property so vested in them, respectively, by the court's order.

On a rehearing of this cause on the question of alimony to be allowed to appellee, the court should hear the evidence and determine the amount of property held by both parties and vest the title to the property in each of them according to equity, as aforesaid, if both of them are entitled to be so invested, and then determine the alimony to be paid to appellee in money, if any she should have.

In addition to the case already cited, the following additional cases may be consulted with profit: *Stewartson* v. *Stewartson,* 15 Ill. 145; *VonGlahn* v. *VonGlahn,* 46 id. 134;

*Robbins* v. *Robbins,* 101 id. 416; *Wilson* v. *Wilson,* 102 id. 297; *Champion* v. *Meyers,* 207 id. 308.

For the reasons aforesaid the decree of the circuit court granting a divorce to appellee is affirmed, and on the question of alimony it is reversed and the cause is remanded for further proceedings on that question.

*Reversed in part and remanded.*

Mr. CHIEF JUSTICE THOMPSON, dissenting.