PETER VOLID, Plaintiff-Counter-Defendant, Appellant, *v.* RITA W. VOLID, Defendant-Counter-Plaintiff, Appellee.

(No. 55704; ▮▮▮▮▮▮▮▮▮)

First District—June 28, 1972.

*Rehearing denied July 26, 1972.*

Rinella and Rinella, of Chicago, (Samuel A. Rinella, Stuart N. Litwin, and Garry E. Dienstag, of counsel,) for appellant.

Benjamin B. Davis, Joseph Winslow Baer, and Muller Davis, all of Chicago, (Davis, Jones & Baer, of counsel,) for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from an order of the Circuit Court directing plaintiff, Volid, (1) to pay temporary alimony in the amount of $1,250 per month to his wife, Rita W. Volid, (2) permitting Rita Volid to remain in the marital home pending proceedings for divorce and separate maintenance, and (3) requiring Peter Volid to pay the expenses of the home exclusive of utilities. The trial judge specifically found that there was no just reason for delaying enforcement or appeal of the order, and the plaintiff appeals.

The parties were married on December 31, 1965. At the time of the marriage, Peter Volid was a wealthy 60 year old man who had been married three times previously and who had children and grandchildren. Rita Volid was a 40 year old school teacher who had never been married before. Three days before the marriage, on December 28, 1965, with the advice of their respective counsels they entered into and executed an antenuptial agreement.

The preamble to the agreement recites that the parties who were contemplating marriage desired to maintain their respective properties for the benefit of themselves and their families. It concludes: "WHEREAS, both parties hereto have been advised by legal counsel concerning this Agreement, their respective rights hereunder, and their prospective rights and obligations as husband and wife under the laws of the State of Illinois," the parties in consideration of their marriage enter into this covenant and agreement.

Paragraph 4 provides in relevant part:

"The parties hereto agree that in the event that a Decree of Divorce or Separate Maintenance shall be entered in a proceeding between them, First Party [Peter Volid] may have an obligation under such Decree to pay reasonable alimony or support to Second Party [Rita Volid]. In the event a Decree so provides, it is agreed that the First Party shall pay to Second Party as and for an equitable lump sum settlement in lieu of all rights to alimony or support, and in lieu of all property rights, if any, and in settlement of her rights, if any, of dower, homestead, inheritance, and all and every other such right which may have arisen as a result of their marriage   *   *   *   the sum of FIFTY THOUSAND DOLLARS ($50,000.00)   *   *   *

if such decree shall be entered within three (3) years from the date hereof; if such Decree shall be entered on a date more than three (3) years from the date hereof, then First Party shall pay to Second Party as and for a lump sum settlement in lieu of the rights referred to above, the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) payable at the rate of SIX HUNDRED DOLLARS ($600.00) per month for One Hundred Twenty-Five (125) successive months, com-

mencing one (1) month after the entry of such Decree  *  *  *

The parties further agree that the purposes of this paragraph 4 are to promote marital harmony and to discourage either party from obtaining monetary benefits by a breach of the marital relationship and the institution of a legal proceedings for separation or divorce."

Paragraph 8 states:

"Each of the parties hereto has made a full and complete disclosure to the other of the assets owned by such party at the present time, and the waiver, release and relinquishment of the rights of each party, as hereinabove set forth, has been made with full knowledge of the extent of the wealth of the other party. A schedule of all of the properties, real, personal and mixed, now owned by First Party and the estimated values thereof and a statement of his income have been examined by the Second Party and her Attorney."

The agreement was subscribed to by both parties. The signature of Peter Volid was witnessed by his attorney, Harry Adelman, and the signature of Rita Wilkes (now Rita Volid) was witnessed by her attorney, Henry Kenoe. According to a notarized certificate attached to the agreement, Rita Volid on the day the agreement was executed stated under oath that (1) she was aware of Peter Volid's wealth and income and the share of it to which she would be entitled upon marriage if the agreement were not executed, (2) that she was satisfied with the provisions in the agreement made for her, and (3) that the agreement was executed as a free and voluntary act by her for the purposes stated therein.

On August 7, 1969, more than three years after the marriage, Peter Volid filed a complaint for divorce in the Circuit Court of Cook County based upon the alleged mental cruelty of his wife. Rita Volid in answering the complaint denied the allegations of mental cruelty toward her husband. She counter-claimed for separate maintenance and sought temporary support. After hearing evidence, the court granted her request for temporary alimony and possession of the marital home.

On appeal, the plaintiff contends (1) that the antenuptial agreement is a valid and enforceable contract which limits and specifies the amount of temporary alimony to be granted, (2) that the amount of alimony granted during the pendency of proceedings should not exceed the amount to be awarded permanently, and (3) that all funds paid as temporary alimony should be credited against any permanent award.

The defendant in response argues (1) that the provisions in the antenuptial agreement limiting the husband's duty to support his wife are void as against public policy, (2) that the antenuptial agreement does not apply to temporary allowances, and (3) that Section 15 of the

Divorce Act (Ill. Rev. Stat. 1969, ch. 40, par. 16) expressly empowers the court to make temporary allowances.

The agreement in the preamble and in Paragraph 8 recites that the parties were represented by counsel and were aware of their rights and respective wealth. The certificate attached to the agreement states that the execution of the agreement was a knowing, understanding, and voluntary act. Evidence was introduced concerning the circumstances surrounding the execution of the agreement. This testimony and the documentary evidence was sufficient to show that Rita Volid was not induced to sign the agreement through fraud, duress, or coercion and that she was fully aware of her rights upon marriage, of the extent of Peter Volid's wealth, and of the terms of the agreement.

The principal contentions of both the plaintiff and the defendant center about the relationship between Paragraph 4 of the antenuptial agreement and the award of temporary support, and it is therefore necessary to consider the scope of Paragraph 4 of the agreement and its applicability prior to the entry of a decree of divorce or separate maintenance. Paragraph 4 in essence provides that "in the event that a Decree of Divorce or Separate Maintenance shall be entered" more than three years from December 28, 1965, Peter Volid will pay to Rita Volid "in lieu of all rights to alimony and support * * * the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) payable at the rate of SIX HUNDRED DOLLARS ($600.00) per month for One Hundred Twenty-five (125) successive months commencing one (1) month after the entry of such Decree."

The purposes of the agreement were "to promote marital harmony and to discourage either party from obtaining monetary benefits * * * by the institution of a legal proceedings for separation or divorce." An award of temporary alimony in addition to the payment of $75,000 would provide Rita Volid more than the amount agreed upon in lieu of alimony.

The defendant urges strenuously that the provisions of Paragraph 4 have no effect on the award of temporary alimony because the provisions in antenuptial agreements attempting to limit temporary support have never been enforceable in Illinois and would be in violation of public policy. In support of this contention she cites and relies upon a series of cases, amongst which are *VanKoten v. VanKoten*, 323 Ill. 323, 154 N.E. 146; *Berge v. Berge*, 366 Ill. 228, 8 N.E.2d 623, and *Threw v. Threw*, 410 Ill. 107, 101 N.E.2d 515, where provisions of separation agreements which were executed after marriage and which in effect relieved a husband of any obligation to support his wife during the marriage were

held to violate public policy. These cases are distinguishable in two main respects. First, the agreements involved in the three cases were executed after the marriage, whereas here the contract was entered prior to the wedding as an inducement to the marriage and before the rights and obligations of husband and wife were undertaken. Second, the agreement here did not attempt to avoid the duty of support, but made a generous provision for the defendant in the event the marriage was terminated. In fact, in view of the age of the parties at the time of the marriage and in view of Rita Volid's knowledge of her prospective husband's prior marriages, it must be noted that the antenuptial agreement may have provided more ultimate support than would a court grant in the exercise of its discretion if the parties were not bound by the agreement. See: *Tan v. Tan*, 3 Ill.App.3d 671, 279 N.E.2d 486.

The defendant further relies upon *Warner v. Warner*, 235 Ill. 448, 85 N.E. 630, where provisions of an antenuptial agreement setting forth the amount of support to be given by a husband to his wife while the parties were married and living together were held to be void and unenforceable. The problem presented in the instant case is different. Here the agreement does not attempt to regulate the operation of a functioning family or the amount of support to be provided while the parties were living together, but it anticipates the possibility of a time when the marital relationship has broken down and the parties are separated by decree. The other cases cited deal with distinctly separate problems. In *Farrell v. Farrell*, 149 Ill.App. 47, it was held that a wife was not barred from seeking attorney's fees for services rendered to her in an action for separate maintenance by an antenuptial agreement waiving such right where she was without funds and was challenging the validity of the antenuptial agreement. *In re Estate of Young*, 319 Ill.App. 513, 49 N.E.2d 742, is inapplicable on the facts.

In cases from other jurisdictions which we have reviewed at length, antenuptial agreements which totally eliminated the right to support or which made inadequate provision for support have been held to violate public policy. See: *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288; *Fricke v. Fricke*, 257 Wis. 124, 42 N.W.2d 500; *Reiling v. Reiling* (1970), 256 Ore. 448, 474 P.2d 327, Annotation 57 A.L.R.2d 942.

The reasons given in these cases for holding as void provisions eliminating the obligation of support upon divorce are (1) that the state's interest in the preservation of the marriage relationship could be defeated by agreements which provide for, facilitate, or tend to induce a separation or divorce of the parties after marriage and (2) that the state has an interest in seeing that a divorced woman has adequate support so that she will not become a charge of the state. The assumptions on

which these reasons are based should be examined. It is often declared that the state has a vital interest in the maintenance of the family, but this interest does not require that persons, once married, must live together forever without regard to the breakdown of their relationship. The necessity of granting divorces is recognized, and the grounds upon which one can be granted are expanding. Where no minor children are involved, as here, and where the husband and wife can function in society separately and independently, the interest of the state in the continuance of the marriage is small.

The most frequent argument made for holding agreements limiting alimony invalid is that such agreements encourage or incite divorce or separation. There is little empirical evidence to show that this assertion is well founded. It is true that a person may be reluctant to obtain a divorce if he knows that a great financial sacrifice may be entailed, but it does not follow from this that a person who finds his marriage otherwise satisfactory will terminate the marital relationship simply because it will not involve a financial sacrifice. It may be equally cogently argued that a contract which defines the expectations and responsibilities of the parties promotes rather than reduces marital stability. See: dissent *Fricke v. Fricke*, 257 Wis. 124, 42 N.W.2d 500.

Many cases state categorically that a husband has a duty to support his wife. This is unquestionably true when the wife is in need of such support. However, when a marriage breaks down and the husband and wife are divorced, the wealth and income of the wife are always considered in determining whether an alimony award should be made and if so in what amount. *Byerly v. Byerly*, 363 Ill. 517, 2 N.E.2d 898; *Gilbert v. Gilbert*, 305 Ill. 216, 137 N.E. 99.

When the rules regarding the husband's duty of support were first enunciated, the roles of a husband and wife were more rigid and defined. The husband worked and brought income into the family while the wife maintained and managed the household. The woman generally did not seek outside employment partly, because "her place was in the home", and partly because few opportunities for meaningful employment were available. Married women nowadays are increasingly developing career skills and successfully entering the employment market. Where a woman is trained, healthy, and employable, and where a woman's efforts have not contributed to her husband's wealth or earning potential, the necessity for an alimony award upon breakup of the marriage is not great.

■■ The reasons given to justify the invalidation of all antenuptial agreements which limit the obligation of support upon divorce do not warrant the condemnation of all such agreements in the name of public

policy. The law gives certain rights to both spouses upon marriage, but these rights may be waived or terminated upon divorce. Upon marriage, a spouse receives inchoate rights to dower and inheritance, but these rights may be waived or limited by contract. The general rule was set forth in *Suess v. Schukat*, 358 Ill. 27, 33—4, 192 N.E. 668, 671:

> "Persons competent to contract may execute a valid antenuptial agreement, (*Kuhnen v. Kuhnen*, 351 Ill. 591; *Kroell v. Kroell*, 219 *id.* 105). Although the law prescribes the rights of a husband and a wife in the property of each other, persons possessing the requisite legal capacity may, by such an agreement made in contemplation of marriage exclude the operation of the law and determine for themselves what rights they will have in each other's property during the marriage and after its termination by death. (*Wetsel v. Firebaugh*, 258 Ill. 404; *Becker v. Becker*, 241 *id.* 423; *Kroell v. Kroell, supra*). Antenuptial agreements are not against public policy but, on the contrary, if freely and intelligently made, are regarded as generally conducive to marital tranquility and the avoidance of disputes concerning property."

■■ It is likewise well settled that a husband and wife may make a valid separation agreement by which one or each of them releases all his rights in the other's property, including inchoate rights to dower and inheritance. *Laleman v. Crombez*, 6 Ill.2d 194, 127 N.E.2d 489.

■■ The law also imposes a duty of support upon a husband, but this may be terminated in a divorce decree. Section 18 of the Divorce Act (Ill. Rev. Stat. 1969, ch. 40 par. 19), *Canady v. Canady*, 30 Ill.2d 440, 197 N.E.2d 42.

■ Once it appears (1) that some marital rights may be waived before the wedding and (2) that the right to support can be terminated upon divorce, it would be anomalous to hold that the parties cannot plan and agree on a course of action in the event that the marriage is unsuccessful and ends in divorce. Particularly is this true where the parties are older and where there is little danger that either party would be without support. The incidence of divorce in this country is increasing, and consequently more persons with families and established wealth are in a position to consider the possibility of a marriage later in life. Public policy is not violated by permitting these persons prior to marriage to anticipate the possibility of divorce and to establish their rights by contract in such an event as long as the contract is entered with full knowledge and without fraud, duress or coercion. See: *Posner v. Posner* (Fla. 1970), 233 So.2d 381, *Hudson v. Hudson* (Okla. 1960), 350 P.2d 596.

■■■ Peter Volid agreed to pay and Rita Volid agreed to receive the sum of $600 per month for 125 successive months in lieu of all rights to alimony or support. It is not our province to make contracts, but to

construe them. Courts cannot make for the parties better agreements than they themselves have been satisfied to make. (*Green County, Kentucky v. Quinlan,* 211 U.S. 582.) The court in the exercise of its discretion awarded temporary alimony in the amount of $1,250 per month. The order should have contained a provision that any temporary sums for her support which are paid will ultimately be deducted from the lump sum settlement agreed to by the parties. Upon the entry of a decree payments of $600 per month are to be made until the balance is paid.

The order of the Circuit Court, in addition to directing the payment of temporary alimony (1) ordered the plaintiff to pay certain scheduled outstanding bills (2) permitted the defendant to reside in the marital home pending the final hearing and disposition of the cause, and (3) required the defendant to make mortgage payments on the marital home and to pay expenses in connection with that residence exclusive of utilities. The order with respect to these additional charges was proper. The money paid for these additional expenses, however, will not be deducted from the lump sum agreement.

The order of the Circuit Court is therefore reversed, and the cause is remanded with directions to proceed in accordance with this opinion.

Reversed and remanded with directions.

DIERINGER, P. J., and ADESKO, J., concur.