*In re* MARRIAGE OF NANCY H. BYRNE, Petitioner-Appellant, and PETER J. BYRNE, Respondent-Appellee.

First District (1st Division)   No. 88—0422

Opinion filed February 14, 1989.

James T. Friedman and James L. Rubens, both of Davis, Friedman, Zavett, Kane & McRae, of Chicago, for appellant.

Arnold B. Stein, of Schiller, Du Canto & Fleck, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

In an action for dissolution of marriage between Nancy and Peter Byrne, a declaratory judgment was entered finding that an antenuptial agreement, entered into by the parties, was valid, applied in the event of divorce, and excluded from marital property all properties and assets of Nancy and Peter, whether acquired before or after the marriage. Nancy appeals. For the reasons below, we affirm.

Peter Byrne was an executive with Emery Air Freight, and Nancy Brennen, an interior designer. In December 1976, Nancy, age 50, became engaged to marry Peter, age 53. The couple set a wedding date of August 29, 1977. Nancy's principal assets were her apartment at 2430 Lakeview, Chicago, and her share of family trust assets, in litigation at the time of her engagement. Nancy wished to protect her apartment and trust estate for the benefit of her children from a previous marriage and therefore suggested an antenuptial agreement to Peter, who agreed.

Nancy contacted Charles Kelly, the attorney handling the trust estate litigation, to draft the antenuptial agreement. Mr. Kelly assigned the task of preparing the agreement to an associate in his firm. On August 10, 1977, a draft of the agreement was sent to Peter's attorney, Roger Eklund. Mr. Eklund made minor revisions that were not resubmitted to Mr. Kelly. Schedules listing each party's assets were later affixed to the agreement. After her first request for the agreement, Nancy had no other contact with her attorney concerning the agreement. On August 24, 1977, Peter and Nancy signed the agreement in Mr. Eklund's office, with Mr. Eklund and two other witnesses present.

Before the wedding, Peter transferred $50,000 of Emery stock to Nancy for her to buy out her ex-husband's interest in the Lakeview apartment, where Peter and Nancy lived after they were married. Nancy later paid for the stock. During the marriage, Peter made no contributions to assessments on the apartment or property taxes, nor did he contribute, with the exception of vacation expenses, to household expenses. The couple kept their property separate, held the earnings from their property in separate accounts, and acquired no jointly held property.

On October 24, 1985, Nancy filed a petition for dissolution of marriage. On March 26, 1986, Peter filed a counterpetition for dissolution and a motion for declaratory judgment concerning the validity and scope of the antenuptial agreement. A hearing on the declaratory judgment established that both parties were educated and sophisticated, that Nancy originally suggested the antenuptial agreement and had her attorney draft the agreement, and that Nancy freely and voluntarily signed the agreement. It was further established that the parties owned no jointly held property.

In an order dated March 6, 1987, the trial court found that the antenuptial agreement was valid and applicable to divorce. The trial court denied Nancy's affirmative defenses to the agreement and ruled that by the terms of the antenuptial agreement, which had been followed by the parties, there was no marital property to distribute. Finding that Nancy had ample means to support herself, the trial court denied her petition for maintenance.

On June 1, 1988, Nancy filed an amended petition for dissolution of marriage, which contained a count seeking rescission of the agreement based on Peter's failure to contribute family support during the marriage. Nancy sought damages or reimbursement for unpaid maintenance during the time of their marriage in the amount of $766,746.00. The trial court granted Peter's motion to dismiss. Nancy did not raise the issue of the dismissal in her notice of appeal, but appeals the ruling that the agreement bars equitable distribution of marital property.

Nancy first argues that the unambiguous language of the antenuptial agreement preserved the premarital estates of the parties without affecting rights in property acquired during the marriage, and that the extrinsic evidence showed that the parties did not intend to waive their rights to equitable distribution of marital property. Nancy's first argument misapprehends the purpose of the extrinsic evidence and treats the case as one of contract construction. The trial court relied on extrinsic evidence to determine the agreement's validity and the language of the agreement to determine its applicability and scope. The evidence and the language of the agreement amply support the trial court's conclusions. Nancy's second argument, that Peter's failure to provide family support during the marriage was a material breach of the antenuptial agreement, was not properly preserved and therefore waived. Review of the trial court's analysis answers Nancy's arguments and shows that the rulings were correct.

■ Marital property is defined as all property acquired by either spouse subsequent to the marriage. (Ill. Rev. Stat. 1987, ch. 40, par. 503(a).) Property acquired during marriage is presumed to be marital

property. (Ill. Rev. Stat. 1987, ch. 40, par. 503(b).) The presumption may be defeated, however, where property is excluded from the marital estate by a valid agreement between the parties. (Ill. Rev. Stat. 1987, ch. 40, par. 503(a)(4).) One such agreement is an antenuptial, which is valid if entered into with full knowledge and without fraud, duress, or coercion. (See *In re Marriage of Burgess* (1984), 123 Ill. App. 3d 487, 462 N.E.2d 203; *Volid v. Volid* (1972), 6 Ill. App. 3d 386, 286 N.E.2d 42.) The trial court heard evidence not, as Nancy argues, to determine the intent of the parties, but to determine the validity of the agreement.

■ The evidence established that Nancy was well-educated and operated her own business. Nancy originally suggested the antenuptial agreement, and her attorney drafted the agreement. Although Nancy did not consult her attorney after the initial request to draft the agreement, she was represented by an attorney to the extent that she sought representation and was not prevented from seeking the advice of counsel. Each party attached a schedule of assets to the agreement. Thus, Nancy had the opportunity to know the extent of Peter's wealth before she signed the agreement. Because Nancy suggested the antenuptial agreement, freely entered into it with knowledge and comprehension of the nature of the agreement, was represented by counsel, and there was neither misrepresentation of Peter's assets, nor a gross disparity in the relative wealth of the parties, there appears to have been no fraud, coercion, or unconscionability. The contract was properly executed and defenses to the contract were defeated. The trial court correctly ruled that the antenuptial agreement was valid.

The trial court also properly determined that the agreement was applicable in the event of either divorce or the death of a party. The second recital clause of the agreement states in part:

"WHEREAS, each party owns and is possessed of property *** and the parties desire to enter into an Agreement with respect to their respective properties, *** and with respect to the rights of the survivor of the parties in and to the property, *** and with regard to their respective rights *** in the event of the dissolution of their marriage by divorce ***."

The fourth recital clause states that each party consulted their respective attorneys, and they were advised of their legal rights, and specifically, that:

"[a]mong other matters, each party has been advised that under the law of Illinois and many other jurisdictions, a spouse who has not made an agreement such as this one, or one of similar effect, is, upon the death of the other spouse, entitled to receive

as the surviving spouse's own property, regardless of the provisions of the deceased spouse's Will [sic], at least one-third of all property owned by the deceased spouse at the time of death, and each understands that by this agreement each of them is relinquishing this right and all rights of every sort to participate in the estate of the deceased spouse, except to the extent provided for herein."

Finally, the trial court properly ruled that all property was excluded from distribution as marital property. The operative section of the agreement, paragraph 2, states:

"2. *Each party hereby forever releases,* relinquishes, waives, quitclaims and grants to the other party, his or her heirs, executors, administrators and assigns, *all rights of dower or curtesy, homestead, family allowance, inheritance, descent, distribution, election, spouse's award, renunciation, survivorship, community property, community interest and all other now or hereafter existing, vested, contingent, or inchoate rights, titles, claims, interest and estates which he or she now has or may hereafter have under any present or future law of any state or jurisdiction, as husband or wife, widow or widower, or otherwise, by reason of and resulting from his or her marriage to the party or the other party's death.* Each party agrees that all property presently owned by the other party, including all interests, rents and profits which may accrue therefrom, shall be considered the separate property of such other party in his or her name alone, including the earnings of such other property which shall likewise be considered the separate property of such other party. Each party shall have at all times the full right and authority, and in all respects the same as each would have if not married, to use enjoy, manage, convey, encumber and by gift or Will [sic] dispose of such separate property. All property acquired or held by the parties shall jointly be so acquired or held as tenants in common unless some other form of joint ownership is specifically and clearly stated in the title documents. The parties intend that no property shall at any time be acquired or held by them as their community property. Neither party shall ever at any time hereafter sue the other party, his or her heirs, executors, administrators or assigns, for the purpose of enforcing any of the rights provided to be waived or relinquished under and pursuant to this agreement. *Each party shall, after such marriage, execute, acknowledge and deliver to the other party such instruments of confirmation or other or further assurances as may be*

*reasonably required to effect the waiving and relinquishment of the rights which such party waives and relinquishes under and pursuant to the provisions of this agreement,* and, upon the request of the other party, agrees from time to time after such marriage to join with the other party in the execution, acknowledgment and delivery of any deeds or other instruments of sale, assignment, transfer, conveyance or other disposition with respect to any other party's property, *whether now or hereafter owned, in order to evidence such party's waiver of any right to dower or curtesy, homestead, family allowance, community property, or any other rights in, to or in connection with such property.*" (Emphasis added.)

In summary, the recital clauses state that each party has certain property, interests, and assets, to which the agreement is meant to apply in the event that the marriage is terminated by death or divorce. Paragraph 2 contains the operative portion of the agreement, providing that each party relinquishes all rights in the other's property and assets resulting from the spousal relationship. The paragraph further provides that both premarital property and earnings from that property shall be kept separate and that property acquired during the marriage shall be kept separate. Other provisions in the paragraph facilitate the separation of property and assets. Based on the language quoted above, the trial court properly found that the agreement was applicable in the event of death or divorce and properly excluded all property from consideration as marital property.

Nancy also alleged, in her amended petition for dissolution, that Peter materially breached the antenuptial agreement by failing to contribute to family expenses during the marriage. Nancy sought rescission of the agreement, or alternatively, damages in the form of an equitable share of the household expenses during the marriage, or a lump sum maintenance. The trial court dismissed the count on Peter's motion. The notice of appeal does not preserve the issue of whether dismissal of the count was proper; therefore, the issue cannot be urged as a ground for reversal on review. *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.

Nancy did, however, preserve the issue of whether the trial court properly denied Nancy's request for maintenance, which was part of the declaratory judgment order. The trial court found that Nancy was self-employed, with income from both her business, and tax-free income from a trust in the amount of $80,000. Nancy owned the co-op that she lived in, valued at over $400,000. Thus Nancy's petition for maintenance was properly denied. Nancy's breach of contract argu-

ment might possibly be considered with respect to whether maintenance was properly denied, but the argument, even if considered, is without merit.

The trial court found no basis for alleging breach of the antenuptial agreement. The agreement states in paragraph 3 that it does not affect or impair the obligation of each party for expenses of the family. But while the agreement does not eliminate the legal duty of the parties to support the family, it neither requires the parties to contribute a specific amount, nor that each party pay a specific percentage of the household or family expenses. During the marriage, which lasted from 1977 to 1985, Peter paid only vacation expenses. Nancy knew the extent of Peter's contributions to the household, and because the parties continued through eight years of marriage with such a division of expenses, it is reasonable to assume that the arrangement was satisfactory to both. Had Nancy felt that Peter was not contributing sufficiently, she had sufficient resources, both personal and financial, to effect a change. However, the time for her to have acted was, as the trial court asserted, during the marriage, not after. The court will not rewrite a contract after the fact. *Ortman v. Kane* (1945), 389 Ill. 613, 623, 60 N.E.2d 93; *Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust* (1985), 130 Ill. App. 3d 167; 172, 477 N.E.2d 376, *appeal denied* (1985), 106 Ill. 2d 560.

Because the allegation of breach of agreement was dismissed and the issue not preserved on appeal, the issue was waived. Considering the argument to determine whether the denial of maintenance was proper reveals no basis for the allegations. Thus, the trial court properly dismissed the breach of contract claim, and the denial of maintenance was proper.

In summary, the evidence showed that the antenuptial agreement was valid, that Nancy and Peter conducted their financial affairs in accordance with the agreement, and that both parties were financially sound. The trial court properly interpreted the agreement to apply in the event of divorce. The agreement by its terms excludes all property from marital property, and provides that the parties maintain their property and their earnings separately. The court correctly ruled that there was no marital property to distribute and properly denied Nancy's petition for maintenance. For these reasons, the declaratory judgment order is affirmed.

Affirmed.

BUCKLEY and QUINLAN, JJ., concur.