JOHN O. REED *et al.*

*v.*

ANDREW E. DOUTHIT *et al.*

1. DEED—*delivery—presumption.* When a deed is produced by the grantee named therein, the presumption of law, in the absence of proof to the contrary, is that the deed was signed and sealed according to its purport, and that the grantee, having it in his possession, received it from the grantor.

2. The requisites of a deed to convey land are, signing, sealing, and delivery, and when the deed is recorded by the grantee, even after the death of the grantor, the burden is on the grantor, or those claiming as his heirs, to prove clearly that the appearances are not consistent with the truth. The presumption of delivery must be destroyed by clear and positive proof.

3. DEED—*delivery upon voluntary settlement.* The law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements, especially when made to infants, than in ordinary cases of bargain and sale.

4. DEED—*delivery.* Where it appeared that a father had made advancements to his adult children and afterward signed, sealed, and acknowledged a deed for certain lands to his minor son, stating that he intended to make a provision for such son, but expected to live on the land until his death, and afterward spoke of the land as his son's, and the son exercised acts of ownership over it and leased portions of it before his father's death, and about sixteen months after the death of the father had the deed to himself recorded: *Held,* even if the father retained possession of the deed until his death that fact would not invalidate or defeat it.

5. A delivery of a deed is not to be proved by the grantee in it, but will

be presumed; and if not delivered the retention of the deed by the grantor until his death will not destroy its effect as a deed when the circumstances or proof show it to be a voluntary settlement for a meritorious consideration upon an infant by a parent.

WRIT OF ERROR to the Circuit Court of Shelby County; the Hon. ARTHUR J. GALLAGHER, Judge, presiding.

Messrs. MOULTON & CHAFFEE, for the plaintiffs in error.

Messrs. HENRY, HALL & WENDLING, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Shelby circuit court brought by the descendants of John Douthit, deceased, who died intestate, for a partition of the lands of which their said ancestor died seized, and to which bill Andrew E. Douthit, Nancy Stewartson, and William H. Douthit, children of John Douthit, and Matilda Douthit, widow of John Douthit, were made defendants. William H. and Matilda Douthit made separate answers, William denying that his father, John Douthit, died seized of the north-west quarter of the south-east quarter, and north-east quarter of the south-west quarter of section thirteen (13) and south-east quarter of the south-east quarter of section two (2) in township eleven (11) north, range four (4) east, of which partition was claimed by the bill of complaint, but that the same was sold and conveyed to him by John Douthit and Matilda, his wife, and that he was put in possession, and made valuable improvements thereon. These lands, it appears, composed the "Home Farm," so called, or a part of it. Matilda Douthit was the widow of John Douthit, his wife by a second marriage, to whom there was born an only child, the defendant William. Matilda, in her answer, denied that John, her husband, owned these lands, and she claimed no dower in them. Replications were put in and the cause set for hearing, on bill, answers, replications, and proofs.

Much testimony was taken, and the court excepted from the decree of partition the above described lands, holding the same were the exclusive property of William H. Douthit in virtue of his father's deed.

The point made here by plaintiffs in error, and it is the only one, was there a delivery of the deed from John Douthit and wife to William H., under which he claims title?

. The deed was executed and acknowledged November 25, 1868, and filed for record on the 9th of February, 1870, about sixteen months after the death of John Douthit, he dying about the close of the year 1868. William, at the date of the deed, was about seventeen years of age, and the only child of his parents living with them.

There is no proof of an actual delivery of this deed by the grantor to the grantee, but it was in the possession of the grantee after the death of his father, and by him placed on record.

It is claimed by plaintiffs in error that it is incumbent on a grantee who is in possession of a deed, to show affirmatively, a delivery.

We do not understand the law so to hold. The requisites of a deed to convey land, are, signing, sealing, and delivery. When a deed is produced by the grantee named therein, what are the presumptions of law? They are, that the deed was signed and sealed according to its purport, and the grantee named in it, having it in his possession, is presumed to have received it from the grantor. In the absence of all fraud in the case, and none is charged or shown in this case, this presumption must obtain and must prevail, unless rebutted by some strong facts in evidence. The formal act of signing, sealing, and delivery is the consummation of the deed, and the burden is always on the grantor to prove clearly that the appearances are not consistent with the truth. The presumption is against him, and the task is upon him to destroy that presumption, by clear and positive proof, that there never was a delivery. *Sowerby* v. *Arden*, 1 Johns. Ch. 239; *Chandler* v. *Temple*, 4 Cushing, 285.

The magistrate who took the acknowledgment of this deed testifies that he had a conversation with John Douthit, the grantor, before he took the acknowledgment, in which Douthit said he had given his older children as much as he could afford, and wanted him to take the acknowledgment of a deed to William. He said he was getting old and wanted to make this deed to William, so that there would be no trouble about it afterward. He said he calculated the property he got of William's mother to be for him; and he heard him say, at different times, after the deed was acknowledged, that the farm belonged to William, but that he expected to live on it the balance of his days.

On the cross-examination of James Patterson, a witness for defendants in error, he testified that when talking about this land, he understood William to say his father had made him a deed, and this was said in the lifetime of John Douthit. This declaration of William was called out by the plaintiffs in error, and is evidence for him.

In connection with this, it is in proof William went into possession of this land in 1860, and continued in possession, exercising acts of ownership over it, and claiming it as his own up to the time of the death of his father, he cognizant of the fact; and during that time, without consulting his father, he rented the land two different years.

In the case of *Ward et al.* v. *Lewis et al.,* 4 Pick. 518, where an assignment by indenture tripartite of an insolvent debtor, in trust for his creditors, purporting to have been delivered by the debtor to the trustees and some of the creditors, one part of which was found in the hands of the trustees, another was, several months after the date, in the hands of the creditors, and in adjusting their claims was often referred to as well by the trustees as by the creditors, the debtor's property having passed into the hands of one of the trustees, who appeared before the creditors in the character of trustee, and made proposals to the creditors in the name of all the trustees, and it was often spoken of by him as being held under the assignment, and was sold by him for the benefit of the creditors; and the debtor,

when he requested one of his creditors to execute the inden-
ture, informed such creditor that he had assigned his property
for the benefit of his creditors, it was held that this was suf-
ficient evidence of a delivery of the deed by the debtor to the
trustees and to the creditors.

We are of opinion these cases fully establish the proposition
that it is not incumbent on the grantee to establish, by proof,
the delivery of the deed under which he claims. The posses-
sion of the deed and exercising ownership over the estate is
strong presumptive evidence of a delivery.

But this was a deed made by a father to his infant son, and
was a voluntary settlement of this land upon the son, and the
meritorious or moving cause was the property his mother had
brought to the grantor, and the further fact that he had suit-
ably advanced his other children.

As to the first branch of this proposition it is well settled
that the law makes stronger presumptions in favor of the de-
livery of deeds in case of voluntary settlements, especially
when made to infants, than in ordinary cases of bargain and
sale. *Bryan et al.* v. *Wash et al.* 2 Gilm. 557 ; *Masterson et
al.* v. *Cheek et al.* 23 Ill. 72. In the view that this was a vol-
untary settlement upon the son, the decisions are uniform that
the possession of the deed by the grantor until his death did
not invalidate or defeat it. *Vilbos* v. *Beaumont,* 6 Vernon,
100 ; *Bole* v. *Newton,* id. 464 ; *Boughton* v. *Boughton,* 1 At-
kins, 625 ; *Claving* v. *Claving,* 2 Vernon, 475.

These cases were recognized as authority by Chancellor
Kent in *Bonn* v. *Winthrop,* 1 Johns. Ch. 329, wherein he says:
" The instrument is good as a voluntary settlement, though re-
tained by the grantor in his possession until his death."

On either hypothesis, then, the decree ought to be affirmed.
A delivery of a deed is not to be proved by the party hold-
ing it, but it will be presumed, and if not delivered, the cir-
cumstances show it was a voluntary settlement, for a meritori-
ous consideration, upon an infant, and the retention of the deed
by the father until his death did not destroy its effect as a
deed.

We find nothing in the record to destroy the presumption the deed was delivered to William.

But if it was not delivered, and was intentionally retained by the grantor until. his death, it being intended as a voluntary settlement upon the son, it must, under the authorities, have the force and effect of a valid deed conveying the fee in the land mentioned therein.

No inference can be drawn, unfavorable to the defendants in error, from the fact that his parents went upon the farm while William was residing upon it, and built a house upon it. They first went into the same house with William, but the old gentleman, believing that he and his aged wife would be more comfortable in a house to themselves, and having plenty of means, he put up one for his accommodation. The old gentleman told Andrew, one of his sons, before he built the house, that he wanted to build it for his own comfort and convenience, but was afraid his children would make a fuss about it, because he was putting more improvements on William's land than on the land of any of the other of his children. To this Andrew replied that he thought he had a right to do so, for he thought his step-mother, William's mother, brought sufficient for that purpose, and that he had a right to use his own pleasure about it. This is the testimony of Mrs. Elizabeth Stewartson, one of the heirs-at-law of John Douthit.

A careful consideration of all the facts in this case satisfies us that this deed to William, if not actually delivered to him, was intended by his father as a settlement upon him, and it must . be upheld as valid and effectual, in the absence of all fraud.

In whatever light the case is to be viewed, we are satisfied the decision of the circuit court was correct, and we affirm the decree.

*Decree affirmed.*