(No. 13357.—Decree affirmed.)

ASA SCOTT *et al.* Appellees, *vs.* DON CORNELL *et al.*—
(W. H. CLINE, Appellant.)

*Opinion filed December 21, 1920.*

1. DEEDS—*when complainant seeking to set aside deed makes prima facie case against delivery—burden of proof.* A complainant who seeks to set aside a deed on the ground that it was never delivered makes a *prima facie* case by proof that the deed was not in the possession of the grantee until after the grantor's death but was in the possession of a third person who after the grantor's death delivered it to the grantee, and to overcome this *prima facie* case by proof that the delivery was in escrow, upon condition, the grantee must show what the condition was and that it was complied with.

2. SAME—*when indorsement on envelope containing deeds is not competent evidence of delivery.* In a suit to set aside a deed from a wife to her husband, which after the wife's death was found in the possession of a third person in an envelope with another deed

to the same property from the husband to the wife, if there is no evidence as to how the deeds came to be in the envelope nor of any contract between the husband and wife to convey their common property to the survivor of them, an indorsement on the back of the envelope in the handwriting of the third person's deceased partner relating to the disposition to be made of the deeds is not competent to prove delivery.

3. SAME—*deed must be delivered in lifetime of grantor.* Delivery is essential to the operation of a deed and must be made in the lifetime of the grantor.

4. SAME—*when grantee must prove deed was delivered in escrow.* Where a grantor has signed and acknowledged a deed and left it with a third person, where it remains until after the grantor's death, the grantee acquires no· title unless he can show that the deed was left with the third party to be delivered to the grantee.

5. TRUSTS—*no trust results from purchase by husband in name of his wife—presumption.* Where a husband causes property for which he has paid the purchase money to be conveyed to his wife there is a presumption that the conveyance is a gift or advancement, and unless this presumption is overcome the husband can claim no resulting trust by paying the purchase money.

6. LACHES—*when complainants seeking to set aside deed are not guilty of laches.* It is an inherent element of *laches* that the party sought to be charged therewith has had knowledge of the facts, and in a suit to set aside a deed the complainants, some of whom are minors and some non-residents, are *not guilty of laches* where they had no knowledge of the deed in controversy until a few months before instituting suit, although the deed had been recorded.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

W. W. WHITMORE, and SIGMUND LIVINGSTON, for appellant.

LESLIE J. OWEN, R. C. DEMANGE, and BARRY & MORRISSEY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Asa Scott filed a bill in the circuit court of McLean county for the partition of two hundred acres of land in that county and the quieting of the title to the undivided

one-half of said land against a deed which appeared upon record from Mary F. Cline to William H. Cline, who was made a defendant to the bill. From a decree which granted the relief prayed for, William H. Cline has appealed.

The land was conveyed on February 27, 1905, by Joseph Lawson to William H. Cline and Mary F. Cline, his wife, for $27,000, which was paid by William H. Cline. Lawson knew no one in the transaction but William H. Cline, who went into and has ever since continued in possession of the land. Mary F. Cline died on December 15, 1913, leaving a will dated May 10, 1913, and a codicil dated November 25, 1913, by which she devised and bequeathed all her estate to her husband for life and directed that at his death it should be divided equally among all her nephews and nieces after the payment of a legacy of $1500 to her niece Belle Scott, with some provisions in regard to the disposition of certain shares. Except her interest, if any, in the land in question, her estate consisted of an undivided one-fourth interest in ten acres of land worth $350, $470 in cash, and notes and accounts amounting to $2315.95. The undivided one-half of the two hundred acres was worth about $22,000. On December 20, 1913, William H. Cline signed and verified by his affidavit a petition for the probate of the will and his appointment as executor as directed by the will. The petition stated that Mary F. Cline died seized and possessed of real estate valued at about $22,000. It was filed in the county court on January 3, 1914, and the will was probated. The complainants and the defendants, except Don Cornell, who was a tenant under Cline, are devisees under the will of Mary F. Cline.

On December 23, 1913, F. C. Barley, who had been engaged in the real estate and loan business since 1893 in LeRoy, where the Clines and Lawson resided and the transaction between them occurred, found in his vault two quit-claim deeds for the land in question, enclosed in an envelope bearing the following indorsement in the handwriting of

C. A. Barley, the father of F. C. Barley: "Deed from William H. Cline to Mary F. Cline, also deed from Mary F. Cline to William H. Cline, left in care of Barley L. & L. Company to be delivered to the survivor in case of the decease of either one.—10/2/1905." F. C. Barley delivered the deeds to William H. Cline. William H. and Mary F. Cline were the grantors in both deeds, and the deeds, which were exactly alike, except that W. H. Cline was the grantee in one and Mary F. Cline in the other, were dated October 2, 1905, and acknowledged on that day before C. A. Barley as a notary public. William H. Cline filed the deed in which he was named as grantee for record on December 24, 1913, and it is that deed which the bill sought to set aside on the ground that it had never been delivered.

On October 2, 1905, C. A. Barley had been in the real estate and loan business in LeRoy for many years, and from 1893 his son, F. C. Barley, was associated with him. They did business under the name of Barley Loan and Land Company, which was a partnership, and continued to do so until C. A. Barley's death, and since that time F. C. Barley has continued the business under the same name. "Barley L. & L. Company" in the indorsement refers to the partnership. The deeds after their execution remained in the possession of C. A. Barley, who placed them in the envelope upon which he wrote the indorsement which has been recited. He died in 1911, in Mrs. Cline's lifetime. No testimony was offered as to any direction given C. A. Barley by Mr. or Mrs. Cline in regard to the deeds. F. C. Barley never saw the deeds until on December 23, 1913, and so far as the evidence shows knew nothing about them.

Counsel for the appellant have argued the case upon the theory that the evidence shows that the two deeds were delivered on the day of their date to C. A. Barley and that the indorsement represents instructions given by the grant-

ors to him at the time. They contend that these facts establish a delivery of the deed of Mrs. Cline to C. A. Barley for her husband on condition that he survive her, and that the condition having been complied with he became entitled to the possession of the deed and by its delivery to him by C. A. Barley became vested with the absolute title. On the other hand, counsel for the appellees contend that there is no evidence in the record of any contract between Cline and his wife, or of any terms upon which the deeds were left with Barley, or that Mrs. Cline placed her deed in his hands or authorized the inscription on the envelope, and it is insisted that this inscription is not evidence against her.

The bill states that the two deeds were signed and acknowledged by William H. Cline and Mary F. Cline; that neither of them was delivered to either grantee, but that Barley, who took the acknowledgments, placed both deeds in an envelope, which he indorsed as before stated and filed away. The answer admits the execution and delivery of the quit-claim deed by Mary F. Cline as set out in the bill, and also admits the execution and acknowledgment of the other deed, and that both deeds were then and there delivered to the Barley Loan and Land Company, to be held until the death of either William or Mary, and on the death of either, the deed to the survivor was to be delivered and the other deed destroyed. The bill did not allege the delivery of the deed by Mary F. Cline but alleged that neither deed was delivered. It did not allege that the deeds were delivered either to C. A. Barley or the Barley Loan and Land Company, and consequently the so-called admissions by the appellant in his answer of facts favorable to himself were of no effect. The facts averred in the bill did not show a delivery, but the contrary. The bill alleged that the deed was placed on record on December 24, 1913, but was not delivered and was a cloud on the complainant's title, and the burden was on the complainant to prove these

allegations. The proof that the deed was not in the possession of the grantee until after the grantor's death but was in the possession of a third person, who after the grantor's death delivered it to the grantee, made a *prima facie* case against the delivery of the deed. If there was a delivery of the deed in escrow upon condition, it was incumbent on the appellant to overcome this *prima facie* case by evidence showing what the condition was and that it had been complied with. (*Kavanaugh* v. *Kavanaugh,* 260 Ill. 179.) The evidence does not show when or under what circumstances the indorsement made by C. A. Barley was made. There is no evidence about it. The bill alleges only that he placed both of the deeds in an envelope and made the indorsement on the envelope. There is no allegation and no proof that Mrs. Cline's deed was delivered to him by her or by her authority, or that she authorized the making of the indorsement or gave him instructions in accordance with the indorsement, or any instructions at all in regard to the deeds. The case rests merely on the fact that she signed and acknowledged the deed, and years afterward, and after her death, the deed was found among the papers of the man who took the acknowledgment, who was also dead. So far as the record shows, the indorsement was his voluntary statement without any authority from her, and it cannot be regarded as binding upon her or her successors in title as to her intention. Had C. A. Barley been living his testimony would have been competent as to the circumstances under which he came into the possession of the deeds and the directions given him by the grantors, but his unsworn statement, written or oral, and not subject to cross-examination, would not have been competent. It is no more competent because of his death. Delivery is essential to a deed and must be made in the lifetime of the grantor. Where the grantor has signed and acknowledged a deed and left it with a stranger, where it remained until after the grantor's death, the grantee acquires no title

unless he can show that it was left with the third party to be delivered to the grantee.

No resulting trust can be claimed by reason of the payment of the purchase money by the appellant. There is no evidence to overcome the presumption which arises where a husband causes property for which he has paid the purchase money to be conveyed to his wife, that the conveyance is a gift or advancement. *Hartley* v. *Hartley,* 279 Ill. 593; *Schultz* v. *Schultz,* 274 id. 341.

It is argued that in equity the deeds are evidence of a contract between the husband and wife that the survivor should have title to the whole. The deeds purport to be immediate conveyances of the land. On the face of them they were intended to be nothing more, and of themselves they constitute no evidence of the terms of any contract other than the executed conveyances. If any other contract existed between the parties it is impossible to determine what that contract was or upon what conditions not mentioned in the deeds they were to take effect.

It is insisted that the appellees are barred from asserting any claim to the land under the doctrines of estoppel and *laches,* by reason of their delay, for more than four years after the deed was recorded, to begin any proceedings to enforce their rights. The appellant was entitled to renounce the will of his wife at any time within one year after it was admitted to probate and receive one-half of all her estate, real and personal, after the payment of her debts, instead of the life estate devised to him by the will. This time expired before any claim was made by the appellees, and it is insisted that by reason of this loss to the appellant the appellees should be estopped from making this claim. It is an inherent element of *laches* that the party sought to be charged therewith had knowledge of the facts. (*Peabody* v. *Burri,* 255 Ill. 592.) The appellees had no knowledge of the deed in controversy until a few months before this suit was instituted. Several of them were minors, sev-

eral of them lived in foreign States, and they proceeded with reasonable promptness as soon as they became aware of the deed, to institute this proceeding to protect their rights. Under the circumstances they cannot be charged with *laches*.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

---

(No. 13358.—Judgment reversed.)
THE NORTH SIDE SASH AND DOOR COMPANY, Appellee, *vs.*
SIGMUND HECHT *et al.*—(WILEY E. HOSIER, Appellant.)

*Opinion filed December 21, 1920.*

1. APPEALS AND ERRORS—*point not assigned in Appellate Court is waived in Supreme Court.* An appellant who fails to assign and argue a point in the Appellate Court waives his right to urge the point in the Supreme Court.

2. SAME—*when finding of the chancellor will not be disturbed.* The Supreme Court will not disturb the finding of the chancellor on a question of fact unless it is manifestly against the weight of the evidence.