(No. 19024.— )
CHARLES TRITCHLER, Appellee, *vs.* ANDREW ANDERSON, Appellant.

*Opinion filed February 20, 1929—Rehearing denied April 3, 1929.*

GEORGE M. BAGBY, (JUSTIN K. ORVIS, of counsel,) for appellant.

CHARLES P. MOLTHROP, and CHARLES R. CASLER, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Anna Tritchler Anderson died intestate in Chicago on July 28, 1924, leaving as her only heirs-at-law her brother, Charles Tritchler, appellee herein, and her husband, Andrew Anderson, appellant herein. She died seized of two pieces of real estate in Chicago, one being a ten-room brick rooming house at 1924 West Monroe street and the other a vacant lot. Appellee filed a bill for partition in the supe-

rior court of Cook county. Appellant answered, denying that appellee had any interest in the property and setting up various facts in support of his contention. He also filed a cross-bill, alleging that he was the owner in fee; that the property was bought with his money, the title was taken in the name of his wife, and a resulting trust existed in his favor, and that after the death of his wife he bought any interest appellee may have had. The cause was referred to a master, who took the evidence and recommended that the original bill be dismissed for want of equity and that a decree be entered as prayed in the cross-bill. Exceptions to the report were sustained by the chancellor, a decree was entered dismissing the cross-bill for want of equity and granting the prayer of the original bill, and an appeal has been prosecuted to this court.

The two questions for determination are, whether there was a resulting trust in favor of appellant which vested all of the title in him; and whether appellant, after the death of his wife, purchased the interest of her brother.

On September 27, 1905, appellant and Anna Tritchler were married in New York City. For about three years prior to the marrage Anna Tritchler and her mother, Catherine Tritchler, who was then about sixty-nine years old, had supported themselves by washing and ironing. Immediately after the marriage the three went to New Orleans, where they remained about seven months and then went to Chicago. From 1906 to 1910 appellant was employed as a janitor in various apartment houses in Chicago, where he was furnished with quarters for himself and family and received from $40 to $60 a month for his services. He claims that during the time he worked as a janitor, and until the death of his wife, he also worked as a diver, pile driver, carpenter and structural ironworker and earned considerable money. In 1910 he leased a ten-room house on Warren avenue and rented rooms for light housekeeping. In 1918 he removed to 2001 West Adams street, where he

rented rooms. In 1918 Catherine Tritchler, who had lived with appellant and his wife, died. There was evidence that upon her death from $1500 to $1800 was found sewed in the hem of one of her garments, and this money went to her daughter.

Anna Anderson, under the name of Anna Tritchler, in 1914 entered into a contract for the purchase of the vacant lot in question. Payments were made for about two years, and on June 28, 1916, a deed was executed to her under the name of Anna Tritchler. On October 24, 1921, a written contract was entered into between her and Max Pam for the purchase of the real estate at 1924 West Monroe street for $4500, and on November 14, 1921, the premises were conveyed to her under the name of Anna Tritchler. At the time this deed was made to her, her husband was present. He was requested by one of the parties to the deal to have a lawyer present to represent him, and a lawyer was present and examined the deed before it was delivered. The evidence shows that appellant then knew that the title was taken in the name of his wife, but he claims he did not know she was taking the title in the name of Anna Tritchler. Some of the money to pay the purchase price was evidenced by check drawn on banks in which the wife had deposits. The property consisted of a large two-story brick house, with a house and barn in the rear. The houses had been used as rooming houses and were in a bad state of repair. After the deed was executed appellant made extensive repairs, put the property in first-class condition and operated it as a rooming house. He managed the property in question and his wife operated the house on Adams street. The wife did all of the washing and ironing for both houses and worked continuously to keep them in operation.

Appellant contends that he is not an educated man; that he could read printing but could not read writing; that he could not write, except his signature; that his wife sug-

gested that their money be deposited in her name and that she draw the checks for the necessary expenses; that the money received by him for the labor which he performed during these years, together with the profits of the rooming houses, was turned over to the wife and was deposited in her name. He testified that he had no money deposited in his own name but that all of his money was deposited in the bank accounts kept by his wife. The evidence, however, shows that in 1906 he opened a bank account in the Hibernian Bank, in Chicago, which account was active until 1925 and had a balance of $647.81. There was an account in his name in 1920 in the Reliance State Bank with a deposit of $300. In 1924 he opened an account in the First Trust and Savings Bank with a deposit of $400, and in 1925 the Hibernian account was transferred to the Continental and Commercial Bank. After the death of his wife he opened' three bank accounts—one with the Central Trust Company for $421.45, one with the First Trust and Savings Bank for $302.25, and one with the Northern Trust Company with a deposit of $1000.

Anna Tritchler and her mother opened an account with the State Bank of Chicago in 1906 with a deposit of $250. In 1907 they opened an account with the First Trust and Savings Bank, which had a balance of $550. In 1913 they opened a savings account with the State Bank of Chicago, which had a balance of $480. In 1919 Anna Tritchler opened a savings account with the Central Trust Company, which had a balance of $500. At the time the Monroe street property was purchased, on November 14, 1921, the wife drew a check for $550 on the First Trust and Savings Bank, one for $480 on the State Bank of Chicago and one for $500 on the Central Trust Company. In 1923 Anna Anderson opened an account with the Central Trust Company, and at the time of her death there was a balance of $421.45 in this account. In 1924, shortly before her death,

she opened a savings account with the First Trust and Savings Bank, which at the time of her death showed a balance of $302.25. Appellant received from his deceased wife's estate not only the balances deposited in these banks but also received $2400 in postal savings script and $300 which his wife had in the house. Shortly after the death of his wife appellant filed a petition in the probate court of Cook county for the appointment of an administrator for her estate. In his petition he swore that she owned the real estate in question, valued at $8000, and that her personal property was of the value of $2700. Letters of administration were issued to him.

The contention of appellant is that he was the one who earned the money and was the moving spirit in acquiring the property, that it was purchased with his money, and that the title was put in the name of his wife for convenience. On the other hand, there is evidence showing that his wife was hard-working, industrious and frugal; that she managed the financial affairs of the family; that she was the moving spirit in the household; that her husband was out of work for long periods of time; that she took care of these rooming houses; that the titles were placed in her name with the full knowledge and consent of her husband and that the largest part of the bank account was kept in her name. The evidence shows that shortly after the death of the wife it was necessary for appellant to close the rooming house on Adams street for the reason that he could not operate it after the death of his wife.

A resulting trust arises by operation of law from the acts of the parties. It is not based upon any agreement but is independent of contract and is raised by the law itself upon the facts proved. (*Crawford* v. *Hurst*, 299 Ill. 503; *Katzing* v. *Wiegand*, 286 id. 646; *Baughman* v. *Baughman*, 283 id. 55.) It arises where land is bought with money of one person and the title is taken in the

name of another. (*Partridge* v. *Berliner,* 325 Ill. 253; *Crawford* v. *Hurst,* 307 id. 243.) To establish the trust the evidence must be clear and unequivocal. (*McCarthy* v. *McCarthy,* 289 Ill. 365; *Orear* v. *Farmers State Bank,* 286 id. 454; *Briscoe* v. *Price,* 275 id. 63.) Where the purchaser is a husband and the title is taken in the name of the wife there is a presumption that a gift to the wife was intended. (*Schultz* v. *Schultz,* 274 Ill. 341; *Scott* v. *Cornell,* 295 id. 508.) This presumption is not conclusive but is a presumption of fact, which may be rebutted, and the burden is on the husband to show that a gift was not intended. (*Wright* v. *Wright,* 242 Ill. 71.) In this case the burden was upon appellant to prove by the preponderance of the evidence that a resulting trust was created in his favor. The presumption is that when he put the title in his wife it was intended as a gift to her. Considerable incompetent evidence was admitted on both sides, apparently without objection. The principal facts upon which appellant seeks to establish a resulting trust were testified to by him without objection and he was not corroborated in many material respects. The wife of appellee was permitted to testify, without objection, to many material and important facts. If the incompetent evidence of appellant is disregarded there is little evidence left upon which a resulting trust could be based. Even if his evidence is considered as competent, he did not prove by the preponderance of the evidence that there was a resulting trust. He knew at all times that the title was in his wife. After her death he admitted that she owned the property. He so swore in the probate court. He told appellee that she owned the property and offered to buy the interest of appellee. It was not until after the appellee refused to convey that appellant claimed there was a resulting trust. It is apparent that this resulting trust was an afterthought and was for the purpose of defeating the claim of appellee.

The evidence did not establish the trust in the clear and convincing manner which the law requires.

After appellant had been appointed administrator he went to New York City to see appellee about buying the interest which descended to appellee from his sister. There is a conflict in the evidence as to what took place at this conversation. The evidence of appellee is that appellant told him that appellant was the owner of one-half of the property and was entitled to dower and homestead in the other half; that the property was purchased for $4500 and settlement would have to be made on the basis of the purchase price; that one-half of that amount would be $2250, out of which appellant would be entitled to dower and to a homestead of $1000; that they finally agreed upon $1250 as the amount which should be paid; that they went to a notary public, who drew up a contract of sale, and $100 was paid appellee and the remainder was to be paid upon the delivery of a deed. After appellant returned to Chicago appellee received information that the property was worth a great deal more than had been represented to him by appellant. He received a letter from an attorney representing appellant in which the attorney told appellee that the amount which appellant had agreed to pay was much more than the property was reasonably worth. After appellee had been informed that the property was worth from $8000 to $12,000 he refused to sign the deed and comply with the contract. Later appellant again went to New York and tried to make a settlement with appellee, and was informed that appellee had been deceived and did not intend to make a conveyance. Appellant tries to explain his attempt to purchase the interest of appellee by claiming that he was trying to purchase his peace. At that time he did not claim he owned all of the property or that there was a resulting trust under the deeds to his wife, but, on the contrary, he informed appellee that appellant's wife was the owner of the property, and he tried to buy the interest of

appellee at much less than it was worth. Under the evidence the chancellor was justified in holding that appellant attempted to commit a fraud upon appellee in the purchase of his share and that appellant was not entitled to enforce the contract.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*