(No. 21251.—

MAGGIE BURNS EVANS, Appellant, vs. ESSIE TABOR,
Appellee.

*Opinion filed October 22, 1932.*

DUNN, J., and HEARD, C. J., dissenting.

HARLINGTON WOOD, and EDWARD PREE, for appellant.

HENRY, HILL & McBRIAN, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

This is an appeal by Maggie Burns Evans from a decree of the circuit court of Sangamon county sustaining the report of the master in chancery and dismissing her bill filed in chancery to quiet title and cancel a deed.

The bill alleged that Margaret Tabor, mother of appellant, died on the 18th of May, 1924, intestate, leaving appellant and Peter Tabor, step-father of appellant, as her only heirs-at-law; that thereafter, on April 14, 1926, Tabor married Essie Lymer, (now Essie Tabor,) appellee and defendant to the bill; that on June 17, 1930, Tabor died, leaving appellee, his widow, surviving as his only heir-at-law; that at the time of her death Margaret was the owner in fee of the premises described in the bill; that after her death Tabor obtained from the papers, files and personal effects of Margaret left by her at the time of her decease, a certain paper or writing, being a purported deed of conveyance dated April 12, 1919, from Margaret and Peter Tabor to Peter Tabor, for the purported consideration of one dollar, purporting to convey the property in the bill described, which purported deed of conveyance was filed of record in the office of the recorder of deeds of Sangamon county April 14, 1926. The bill represented that the purported deed by Margaret to Peter Tabor was not delivered by her during her lifetime or by anyone for or on her behalf or with her consent; that there was no delivery of the deed; that the same was obtained and placed of record by Tabor through fraud and circumvention; that by being placed of record the same became a cloud upon the title

of appellant in the premises; that appellant is the sole heir of Margaret, and by reason of the death of Tabor is entitled to inherit the premises from her mother; that Tabor was not during his lifetime seized of an estate of inheritance in said property and that any dower interest abated with his death. Appellee filed her answer to the bill, denying that the execution of the deed was procured through fraud and circumvention and alleged that the deed was executed and delivered in the lifetime of Margaret Tabor; that Peter Tabor was seized in fee simple of the premises from the time of the delivery of the deed until his death and that he exercised open and exclusive possession claimed under the deed, and that by virtue of his death appellee became entitled thereto. The cause was referred to a master in chancery to take proofs and report the same, with his conclusions, to the court. The master heard the evidence and reported the same to the court and recommended that a decree be entered dismissing appellant's bill for want of equity. A decree was entered by the court in accordance with the recommendations of the master.

Appellant testified that after her mother's death, and before burial, a man by the name of Horn came to the house where the Tabors resided; that he and Peter Tabor sat on the porch for half an hour and had a confidential talk and after that Tabor came into the house and went into the bed-room where the body of Mrs. Tabor was; that he opened the bottom bureau drawer and took some papers out, put them into his hip pocket and went out and walked across the street to Horn's shop; that the papers were in the bureau which her mother had in her bed-room; that it was used exclusively by her as her own private piece of furniture in which she kept her private belongings; that witness did not think Tabor had any access or right of access to the bureau; that she did not just know as to that; that he did not have anything of his in the bureau; that about six months later she and Tabor went to Horn's shop

and each of them was handed a paper by Horn; that hers was a deed for one acre and Tabor's was for seven acres; that Horn just said, "Here are a couple of deeds;" that he did not tell how they came to be left with him and did not comment upon them at all; that at the time Tabor got the papers out of the drawer the door of the room was not closed and she was outside looking in; that she did not see or know the contents of the papers taken by Tabor from the bureau, although she said "they were the same kind of papers" afterwards delivered by Horn.

Other witnesses corroborated appellant's testimony, although none positively identified the papers in question. No offer of proof of any facts contrary to this testimony was made by appellee. Horn died prior to the trial. Tabor had possession of the premises in question after the death of Margaret Tabor until the time of his death, and since that time possession has been in appellee, Essie Tabor.

The principal issue raised by this appeal was whether the deed from Margaret and Peter Tabor to Peter Tabor was ever lawfully delivered to him. Appellee contends that there was a presumption of delivery from the fact that the maker had placed the deed in the hands of a third party. But the proof does not bear out this contention, as there was no evidence to establish the fact that the deed in question had ever been placed by Margaret in the hands of Horn or any other person for delivery. The deed was found in Horn's possession six months after Margaret's death, without any explanation of how it got there, except the testimony of appellant that she had seen her step-father get some papers out of the lower bureau drawer in her mother's bed-room after the latter's death and before her burial. The unexplained possession of a deed in the hands of a third party after the death of the grantor raises no presumption of delivery. Delivery of a deed must be established by a preponderance of evidence. (*Nofftz* v. *Nofftz*, 290 Ill. 36.) Delivery is the final act on the part of the grantor by which

the purpose of the conveyance is consummated, and without it all other formalities are insufficient to render it effectual as an instrument of title. (*Herrin* v. *McCarthy,* 339 Ill. 530.) It is indispensable to delivery that the grantor shall part with control over the deed and shall not retain a right to reclaim it. (*Hawes* v. *Hawes,* 177 Ill. 409; *Hill* v. *Kreiger,* 250 id. 408.) In *Walls* v. *Ritter,* 180 Ill. 616, the grantee in a deed produced the key to the grantor's safety deposit box after the latter's death, in which box was found a sealed envelope containing several deeds, among them the one in question in that case, and it was contended that the delivery of the key to complainant was a symbolical delivery of the deed and manifested an intention of the grantor to deliver it, but this court there held such delivery insufficient. If the custody of a deed by any other person in whose possession it was left was, in fact, intended for the grantee, it was incumbent on the person claiming title by virtue of the deed to prove the fact of delivery. *Johnson* v. *Fulk,* 282 Ill. 328; *Kavanaugh* v. *Kavanaugh,* 260 id. 179.

In this case there was no proof of the deed's delivery by the grantor during her lifetime. It was dated April 12, 1919, and was not recorded by the grantee until the day of his re-marriage, April 14, 1926, or nearly two years after the grantor's death. While courts indulge the presumption that deeds duly acknowledged and recorded in the lifetime of the grantor ·have been delivered and accepted, this presumption vanishes by any proof that such deed was, in fact, never delivered, and such presumption is not indulged where the recording is after the death of ‚the grantor. (*Herrin* v. *McCarthy, supra; Brown* v. *Brown,* 167 Ill. 631; *Nofftz* v. *Nofftz, supra; Stanforth* v. *Bailey,* 344 Ill. 38.) There was no evidence to show that the deed in question was ever in the possession of Horn prior to May 18, 1924, when Margaret Tabor died. The evidence shows that Margaret retained possession of the property

described in the deed and exercised acts of ownership and complete control over it during her lifetime, receiving rents, making leases and paying the taxes. Even if we disregard the evidence of appellant that Horn came to the Tabor home after the death of the grantor, and that, while there, the bureau drawer was opened by Tabor and some papers taken therefrom and delivered to Horn, it was still incumbent upon appellee to prove delivery of the deed by a preponderance of the evidence. This she has failed to do, as all the evidence introduced by her related to the recording of the deed and the payment of taxes after the grantor's death. The instrument in question was a statutory warranty deed in the ordinary form, with no exceptions or reservations. If it had taken effect according to its terms it would have conveyed to the grantee a present estate in fee simple in the property. That it was not intended to be absolute and was not intended to operate immediately is conclusively shown by the acts of the grantor in retaining complete possession and control over the property as well as by the act of the grantee in not recording the deed until nearly two years after the grantor's death. Such control over the property, with acts of ownership, is inconsistent with the vesting of title in the grantee according to the terms of the deed. *Weigand* v. *Rutschke,* 253 Ill. 260; *Hill* v. *Kreiger, supra; Nofftz* v. *Nofftz, supra.*

Appellee further insists that appellant was not a competent witness in this case because appellee defends as an heir-at-law, citing section 2 of the Evidence act. (Smith's Stat. 1931, chap. 51, p. 1473.) But, even disregarding appellant's entire testimony, we find no proof in the record to sustain appellee's contention that the deed was delivered. The unexplained possession of a deed in the hands of a third party and its recording two years after the grantor's death and seven years after its execution is the sum total of appellee's proof of delivery. This proof not only fails to establish the delivery of the deed but also is

insufficient to even raise a presumption of its delivery. (*Herrin* v. *McCarthy, supra; Stanforth* v. *Bailey, supra.*) No issue was made by the pleadings except as to the validity of the deed in question, and this issue depended entirely on the question of its delivery. If the deed was never delivered by Margaret Tabor to Peter Tabor, no title could pass thereunder to Peter Tabor's second wife after his death. Under the authorities above cited it was incumbent upon the appellee, who claimed title by virtue of the deed, to prove the fact of its delivery, (*Johnson* v. *Fulk, supra; Kavanaugh* v. *Kavanaugh, supra;*) and this she has failed to do.

Appellee also has raised the question of *laches* as ground for dismissal of the bill, but the record shows that this point was not raised by her answer in the trial court. Under these circumstances it cannot be raised here for the first time. To be availed of, the defense of *laches* must be set up by plea or answer, so as to afford complainant an opportunity to amend the bill by inserting the alleged reasons for the delay. *Ogden* v. *Stevens,* 241 Ill. 556.

While the findings of the chancellor are not ordinarily disturbed by a court of review unless the weight of the testimony is manifestly against such findings, yet the evidence here absolutely fails to show a delivery of the deed in question, and the facts preclude any presumptions of delivery. On the evidence in this record the circuit court should have held that there was no delivery of the deed.

The decree of the circuit court is accordingly reversed and the cause is remanded for further proceedings not inconsistent with this opinion. *Reversed and remanded.*

DUNN, J., and HEARD, C. J., dissenting:

We do not agree with either the judgment of the court or its opinion. The opinion waives consideration of the objection to the testimony of the appellant and her husband

because of their incompetency under section 2 of the Evidence act, and holds that, disregarding the appellant's entire testimony, there is no proof in the record to sustain the appellee's contention that the deed was delivered. This implies that the burden was upon the appellee to prove that the deed was delivered, and the opinion states that the unexplained possession of a deed in the hands of a third party and its recording two years after the grantor's death and seven years after its execution are the sum total of appellee's proof of delivery, and not only fail to establish the delivery of the deed but are insufficient to raise a presumption of its delivery. As to the testimony of the appellant and her husband, section 2 of the Evidence act is conclusive against its competency. The appellant sued as the heir of her mother, the grantor in the deed, and the appellee defended as the heir of her husband, the grantee, and under the express terms of the statute neither was competent to testify in the case of her own motion or in her own behalf, and the husband was likewise incompetent. *Heintz* v. *Dennis,* 216 Ill. 487; *Worrell* v. *Torrance,* 242 id. 64; *Gillam* v. *Wright,* 246 id. 398; *Fitzgerald* v. *Daly,* 284 id. 42.

The appellant cites the case of *Johnson* v. *Fulk,* 282 Ill. 328, to the point that where a party sues or defends as a grantee and not as an heir the adverse party is not rendered incompetent to testify in his own behalf. That statement of the law appears in the opinion and is a correct statement of the law. In the four cases cited in support of it, the defendants against whom the objection was directed were either suing upon or defending a title as grantees in a deed from the deceased person or his executor and not as heirs of the deceased person. No issue was made by the pleadings except as to the validity of the deed in question, and this issue depended entirely on the question of its delivery. If the deed was never delivered by Margaret Tabor to Peter Tabor no title could pass under it to Peter Tabor's second wife upon his death.

The appellant insists that it was incumbent upon the appellee, who claimed title by virtue of the deed, to prove the fact of its delivery, and that she has failed to do so. The bill alleged the execution of the deed by Margaret Tabor, the deceased, to Peter, her husband, the appellant's step-father, and its recording in Sangamon county. This made a *prima facie* case of the delivery of the deed. A deed executed, acknowledged and recorded is presumed to have been delivered. (*Reed* v. *Douthit,* 62 Ill. 348; *Harshbarger* v. *Carroll,* 163 id. 636; *Standard Trust Bank* v. *Carlson,* 315 id. 451.) To invalidate the *prima facie* case made by the allegations in the bill of the execution and recording of the deed the bill further alleged that the deed was not delivered, but that after the death of the grantor, Peter, the grantee, obtained the deed from the papers, files and personal effects of Margaret, the grantor, through fraud and circumvention and caused it to be recorded. These allegations of non-delivery, fraud and circumvention were denied by the answer, and if the complainant had introduced no evidence her bill would necessarily have been dismissed. Whoever questions the fact of delivery under such circumstances must assume the burden of overcoming the presumption by clear and convincing evidence. (*Reed* v. *Douthit, supra; Harshbarger* v. *Carroll, supra; Standard Trust Bank* v. *Carlson, supra; Himes* v. *Keighblingher,* 14 Ill. 469; *Warren* v. *Town of Jacksonville,* 15 id. 236; *Maule* v. *Maule,* 312 id. 129.) The allegations of the bill may have been sufficient to meet the *prima facie* case of delivery admitted by the allegation of the execution and recording of the deed and may have been sufficient as a basis for proof of their truth, but they were denied, and it was necessary to the appellant's right of recovery that they should be proved. The burden was therefore upon her to prove the case made by her bill and to show by evidence the circumstances overcoming the *prima facie* case. (*Scott* v. *Cornell,* 295 Ill. 508.) In the latter case the bill alleged

that the deed was placed on record on December 24, 1913, which was after the death of the grantor, but was not delivered and was a cloud on the complainant's title, and the court held that the burden was on the complainant to prove these allegations. It was further held that proof that the deed was not in the possession of the grantee until after the grantor's death but was in the possession of a third person, who after the grantor's death delivered it to the grantee, made a *prima facie* case against the delivery of the deed, and, if there was a delivery of the deed in escrow upon condition, it was incumbent on the appellant to overcome this *prima facie* case by evidence showing what the condition was and that it had been complied with. *Kavanaugh* v. *Kavanaugh*, 260 Ill. 179, was cited in support of this position. In the present case, however, as stated in the court's opinion, there is no evidence that the deed was in Horn's possession before Margaret Tabor's death, and there is no competent evidence that it ever was in Horn's possession either before or after her death, except that he probably had it in his hands at the time he certified to its acknowledgment. The competent evidence shows nothing further than that the deed was executed and acknowledged and after the grantor's death was recorded. The only competent evidence in regard to Peter's taking any papers from Margaret's bureau is that of Oscar Bernard Evans, the appellant's son, who testified that after his grandmother's death, and before her burial, Peter was on the premises; that Horn came over and had a conversation with Peter, and then Peter went into the room, got down to the bureau drawer and got some papers; that it was his grandmother's bureau and she kept her stuff in it; that Peter squatted down at the bureau drawer, which was opened, and took the papers away. The witness was unable to describe the papers, as they were folded. Peter took them across to Horn—went clear across to his building there—but the witness could not see that he handed

them to Horn. The papers that he saw Peter take out were just printed papers, folded up. That was all he could tell. He did not see in that box before his grandmother's death.

The only evidence as to the manner of the operation of the land after the execution of the deed is contained in the testimony of David Evans, also a son of the complainant, who testified that he had been familiar with the land all his life, and that "our family, my father and I, jointly farmed that land the last ten years of the lifetime of Mrs. Tabor," and that he had a conversation with Mrs. Tabor, his grandmother, about renting the land and with reference to the payment of rent, and that he always paid her up to her death, in 1924. He never made any payment of rent to Peter Tabor or had any contractual relations with him relative to the use of the land, because he never talked from one year to the other. "We rented it thirty-five years and paid the rent to my grandmother, either grain or money, and that continued up to the time of her death." There is no other evidence of her control of the land, payment of taxes or procuring of insurance on the buildings. The tenants continued for the remainder of her life to occupy and use the land under the terms of the old lease and pay the rent to her as they had done for twenty-five years before the execution of the deed. She and her husband were living together, and there is evidence that he paid the taxes for at least two years and no evidence as to any other years. The evidence does not constitute that clear and convincing proof that the deed was not delivered which is required to overcome the presumption arising from the execution and recording of the deed.

In our opinion the decree of the circuit court should be affirmed.