(No. 23368.—

NAOMI BYERLY, Appellant, *vs.* JESSE H. BYERLY *et al.* Appellees.

*Opinion filed June 10, 1936.*

Frank E. Lickhalter, and Eugene W. Kreitner, for appellant.

Kramer, Campbell, Costello & Wiechert, for appellee Jesse H. Byerly; Baker & Lesemann, for appellee Horatio S. Byerly.

Mr. Chief Justice Herrick delivered the opinion of the court:

Naomi Byerly filed her complaint for divorce against her husband, Jesse H. Byerly, in the circuit court of St. Clair county, charging him with extreme and repeated cruelty. Subsequently she filed her amended complaint, which was again later amended, making defendants thereto her husband and his brother, Horatio S. Byerly. By the amended pleadings, in addition to the divorce prayed for in the original complaint, she sought to set aside a deed bearing date of May 3, 1933, purported to be made by herself and her husband conveying three pieces of property in East St. Louis to Horatio S. Byerly. She charged that her signature to the deed was a forgery and that the conveyance was fraudulently conceived and completed for the purpose of defrauding her. Issues were joined by appropriate pleadings. The question of divorce was heard in open court and found in favor of the plaintiff. By agreement the issues as to alimony and the validity of the deed were referred to the master in chancery. His findings on the status of the deed were adverse to the plaintiff. He further found that she was entitled to alimony and solicitor's fees, and recommended that she be awarded alimony of $50 per month until the further order of court but for a period of not to exceed six months from the date of entry of the decree, the payment to her of the sum of $300 for her solicitor's fees and expenses in and about the prosecution of her suit,

and that one-third of the costs of the suit be paid by the plaintiff and two-thirds by Jesse H. Byerly. The court sustained her objections, in part, to the amount of alimony, solicitor's fees and expenses, found that she was entitled to $60 per month as alimony, payable on the first and fifteenth days of each month, until the further order of the court, and $450 for solicitor's fees and her expenses, awarded her certain of the household goods and a Hudson automobile, overruled her objections to the validity of the deed, found it conclusive upon her, entered a decree in accordance with his findings, including divorce, and adjudged all the costs against the husband. The plaintiff brings the case here on appeal but does not question the decree so far as it awards her a divorce. She has in this court abandoned her claim that her signature to the deed was forged.

Two issues are presented: (1) Whether the deed to Horatio S. Byerly was fraudulent as to the plaintiff, and (2) the sufficiency of the allowance made to the plaintiff by the trial court for alimony, solicitor's fees and expenses. We will dispose of the issues in the order named.

The evidence shows the parties were married March 8, 1920, and separated on January 15, 1934. The plaintiff was thirty-eight years old, able-bodied and in good health at the time of the trial below. This marriage was her third. No children were born of the union. She was gainfully employed just prior to her marriage to Jesse H. Byerly.

The three pieces of property involved in the deed may be referred to as the Hortense, Ogle Heights and Arlington places, respectively. On March 22, 1929, at the request of the plaintiff's husband, H. E. Morris and wife made their two deeds, one purporting to convey to the plaintiff lot 6 and the other lot 7. These two lots constitute the Ogle Heights place and were bought and paid for by the plaintiff's husband. On October 21, 1930, the plaintiff's husband made a deed to her purporting to convey the Arlington place property. On January 30, 1931, he made

another deed purporting to convey to her the Hortense property. These several deeds the husband caused to be recorded and returned to him. They never were in the possession of the plaintiff, and she had no knowledge that the title to any of the property had at any time been in her name until after she filed her original complaint in the present proceeding.

The plaintiff invokes the doctrine that a legal presumption arises that a deed has been delivered to and accepted by the grantee by proof of the execution and recording of such deed by the grantor. This general principle of law is correct and should be applied in proper cases, but in the case at bar the evidence conclusively establishes the fact that there was no delivery to the plaintiff of any of the deeds. This presumption of delivery does not attain the dignity of evidence nor is it to be considered or weighed as evidence. The presumption completely disappears by proof that such deed, as a matter of fact, was never delivered to the grantee. (*Evans* v. *Tabor,* 350 Ill. 206; *Truttmann* v. *Truttmann,* 328 id. 338.) None of the four deeds in question ever having been either actually or constructively delivered to the plaintiff, there could be no acceptance of such deeds by her. *Talty* v. *Schoenholz,* 323 Ill. 232, 242; *Union Mutual Life Ins. Co.* v. *Campbell,* 95 id. 267, 281; *Evans* v. *Tabor, supra,* p. 210; · *Truttmann* v. *Truttmann, supra,* p. 341.

The plaintiff, also, in further pursuance of her contention that she became the owner of these three properties, urges the law is that where the husband purchases property and the title thereto is taken in the name of the wife there is a presumption of a gift to her, and, while such presumption is rebuttable, the burden is upon the husband to prove that a gift was not intended. (*Tritchler* v. *Anderson,* 334 Ill. 211; *Wies* v. *O'Horow,* 337 id. 267.) The evidence in the case shows that the husband was at all times in the possession of these several pieces of property until

their transfer to his brother, and that the wife never had possession of any of the property adversely to her husband. Again the same rule as to the presumption of gift arising from recording applies here. (*Crysler* v. *Crysler,* 330 Ill. 74.) However, the presumption fails on proof of a contrary intention where all the elements of a gift are not present. The presumption is always rebuttable. The evidence is not contradicted that Byerly was engaged in the garage and automobile sales business. He testified, in substance, that because of the possibility that he might be sued for damages growing out of injuries inflicted in the driving of automobiles, and other liabilities that might arise in the operation of his business, he caused the titles to the various pieces of property in question here to be placed of record in the name of his wife, and that there was no intention on his part to give any of such property to her.

The testimony is that the husband and wife lived in one of the properties. The husband collected the rents from the other premises at all times. The plaintiff had no property of her own except her personal effects and jewelry valued at $2500, given by the defendant husband to her. She contributed nothing out of money of her own, either to the defendant husband, his business or the purchase price of the properties the titles to which are here in controversy, or any other real estate owned by him. It was established that it was not the intention of the husband to give to the plaintiff any of the properties and the title thereto never vested in her.

On May 3, 1933, the plaintiff joined her husband in a deed conveying to the defendant Horatio S. Byerly the three parcels of real estate hereinbefore named, and which deed was thereafter caused to be recorded on October 9, 1933, by Horatio S. Byerly. The consideration recited in this deed was one dollar. The plaintiff insists that if it should be held that the title to such property was not in her but was in her husband, then the conveyance made to

her brother-in-law was in fraud of plaintiff's rights. She urges that the property was not transferred for a valid consideration but the conveyance was merely a sham carried out by the brothers for the purpose of defeating her in the recovery of adequate alimony. The facts with reference to this conveyance and leading up to it are, that the defendant husband purchased the Ogle Heights property in March, 1929, for $12,000. He did not have the money with which to pay for such property but borrowed from his brother, Horatio S., certain real estate mortgages, and notes secured thereby, aggregating $12,000, which were the absolute property of Horatio S. Jesse H. pledged these notes and mortgages to the Union Trust Company of East St. Louis as collateral to his note for $12,000, which sum he borrowed from the trust company for the purpose of paying for the property. When the collateral matured, the proceeds derived therefrom were used to pay the $12,000 note of Jesse H. to the trust company. Thereupon he made and delivered his note to his brother, Horatio S., in the sum of $12,000, payable on demand, with interest at six per cent. The evidence further shows that the defendant husband's business, while for several years successful, had been operated at a great loss after 1928; that he later sold the business but did not realize the purchase price thereon, was compelled to take it back, again sold it, but the security he received on the latter sale was practically worthless. No interest had been paid from the time the note of Jesse H. had been made. In 1933, after negotiations between the brothers, Horatio S. agreed to take over the three pieces of property in question in satisfaction of his brother's note and interest accrued thereon. Thereupon the husband and wife made the deed to the property in question and the defendant husband's note was surrendered to him. No issue is made that if the sale was genuine the purchase price paid was inadequate. Also, as a further consideration for the conveyance, the evidence discloses that the mother of the

two defendants owned the property heretofore designated as the Arlington place, which was conveyed by her on June 24, 1930, to Jesse H. in order to obviate administration of her estate after her death, and with the agreement that the property ultimately was to be conveyed by him to Horatio S., who was a bachelor, for his services and companionship in caring for his mother, who was then eighty-nine years of age.

As supporting her charge of fraud, the plaintiff lays great stress upon the fact that the parties to the transaction and conveyance here attacked were brothers. This relationship subjects the transaction to a closer scrutiny than if the parties were strangers, but that these parties are brothers does not of itself attain the dignity of proof of fraud, nor is there any presumption that their transactions with one another are fraudulent. Men are presumed to be honest, and their dealings with one another, even though they are brothers, are assumed to be just and without taint. Fraud is never to be presupposed but must be established by convincing proof and by the greater weight of the evidence. (*Garrett* v. *Garrett,* 343 Ill. 577, 580; *Ayers Nat. Bank* v. *Barber,* 287 id. 182.) A brother may protect another brother who is his creditor if the transaction is made in good faith. Nor does the fact that the parties are related as brothers create a presumption that there is not a *bona fide* indebtedness owing by one to the other. The conveyance of the three tracts was made for an adequate consideration.

The fact that the plaintiff did not owe any part of the debt to Horatio S. Byerly and could not be held legally liable therefor is not a legal ground for setting aside the deed which she signed. All that she conveyed thereby was her inchoate right of dower in the three properties and her homestead estate in the Arlington Heights property. The evidence in the record shows that she had knowledge of what she was signing at the time she executed the deed in question and that no fraud was perpetrated upon her in that respect. The transfer was completed by the delivery of

the deed to Horatio S. The conveyance was founded upon a valid consideration owing by the husband to the grantee, and even though the plaintiff received no consideration for executing the deed, she cannot for that reason impeach the conveyance although its sole purpose was the payment of a debt owing by her husband. (*Sebastian* v. *Gorecki,* 339 Ill. 393; *Stone* v. *Billings,* 167 id. 170, 180; *Martin* v. *Clark,* 116 id. 654, 658; *Edwards* v. *Schoeneman,* 104 id. 278.) The decree of the circuit court was correct in refusing to set aside the deed to Horatio S. Byerly.

It is earnestly urged by the plaintiff that an adequate allowance of alimony and solicitor's fees was not made for her. It is true the record shows the defendant husband in 1929 was worth approximately $80,000 or more, but the evidence further conclusively establishes that since 1929 he has sustained drastic financial losses. The proof is that the only income the defendant husband had at the time of the trial in the court below was the rent which he derived from six pieces of property owned by him, the title to which is not in controversy here. The only personal property, other than the household goods, shown owned by the husband are two used automobiles, one of which the trial court awarded the plaintiff, an equity of about $500 in a mortgage pledged to secure a debt, and a debt of $700 due him from E. E. Miller. The rental from all six of the properties produced a gross income of $166 per month. It is to be borne in mind that the expenses of up-keep, insurance and taxes on these properties are to be met by the husband.

There is no hard and fast rule for the fixing of alimony. Matters which are usually considered by the court in determining alimony are the ages of the parties, their condition of health, the property and income of the husband, separate property and income, if any, of the wife, the station in life of the parties as they have heretofore lived, and whether or not there are any children dependent upon either for support, and also the nature of the misconduct of the

husband. It was never intended that the allowance of alimony shall be used as a means of visiting punitive damages upon the husband in favor of the wife for the husband's misconduct, but, guided by the different phases, heretofore mentioned, of the situation of the parties, such allowance is to be made as may furnish the wife support or contribute to her partial support. (*Gilbert* v. *Gilbert,* 305 Ill. 216.) If the circumstances of the parties change, upon proper showing the court may increase or decrease the amount of alimony as conditions may warrant. Under the record the plaintiff has no ground for complaint as to the amount awarded her for alimony. The amount of allowance of solicitor's fees and expense money to the plaintiff was within the judicial discretion of the court. While, under the showing made, the court might have been warranted in allowing a greater sum, we cannot say the court abused its judicial discretion in fixing the amount he did.

Finally, it is urged by the plaintiff that the court should have allowed her in fee simple, as alimony, a part of the real estate owned by her husband. The court secured the payment of alimony awarded by making the same a lien upon three of the six pieces of the husband's real estate. The general rule in this State is, that in a divorce proceeding the court will not transfer to the wife, who has prevailed in the suit, the fee simple title to real estate of which the husband is seized. Here the plaintiff did not make a case showing any special equities which would at all justify a court in awarding any portion of her husband's real estate to her. It is only in that situation that the court is warranted in transferring the title of the husband's lands to the wife. *Giesler* v. *Giesler,* 336 Ill. 410; *Lipe* v. *Lipe,* 327 id. 39; *Soltysik* v. *Soltysik,* 317 id. 247; *Meighen* v. *Meighen,* 307 id. 306.

The decree of the trial court did substantial justice between the parties. The decree of the circuit court of St. Clair county is affirmed.

*Decree affirmed.*