Edna N. Glassmeyer, Plaintiff-Appellee, *v.* Raymond M. Glassmeyer, Defendant-Appellant.

(No. 54268;

First District—February 4, 1971.

420

Warren R. Ross, James East, and Joseph A. Farina, all of Chicago, for appellant.

Epstein, Wilsey & Kirsh, of Chicago, (Sanford Kirsh, of counsel,) for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This is an appeal by the defendant from an order denying a petition for modification of the alimony provision of a decree for divorce entered on December 6, 1967. Defendant bases his right to relief on what he charges was a substantial reduction in his personal income for the year 1968. After a hearing the trial court found there had not been such a substantial change in income since the entry of the original decree as to warrant a reduction in alimony payments. On this appeal the defendant's sole contention is that the evidence clearly established a change in circumstances requiring a reduction in alimony. The facts follow.

The divorce decree provided that the defendant pay alimony in equal monthly installments totaling $15,000 a year. According to the decree the award was based on three findings: (1) that the defendant's average annual net income for the years 1962 through 1966 was approximately $30,000; (2) that he owned securities which had a market value of $70,000 or $75,000; and (3) that a factory, machinery and building he owned was worth approximately $75,000.

The only witnesses to testify at the hearing on defendant's petition were the defendant and his accountant. Their testimony revealed that the basis of defendant's alleged financial distress was what appeared on the books to be a sharp decrease in the profits of his business, a sole proprietorship known as the Peoria Machine Works. In 1967, after deducting a proprietor's salary allowance of $24,000, the business returned a profit of $24,577.58. Considering that the defendant alone had control of the business, that was the equivalent of $48,000 in income to him. Defendant retained for his personal use the sum of $21,820.80 and applied the balance to his business capital, thereby increasing the net

worth of the sole proprietorship to $108,239.03. It appeared that the business lost $13,309.37 in 1968 after a salary allowance to defendant of $24,000. In the same year defendant withdrew $39,027.74 from business capital.

Defendant's federal income tax returns for 1967 and 1968 were admitted in evidence. They show that he had a net income of $36,696.42 in 1967 and $26,265.91 in 1968. The apparent conflict between the income tax returns and defendant's contention that his personal income had declined substantially below the $30,000 annual basis on which the alimony award was partially based is, according to witnesses, due to a change in the method of accounting from the cash method in 1967 to the accrual method in 1968. By changing to the accrual method, the defendant's tax return showed as income accounts receivable. His accountant testified that if no change in the accounting method had taken place, defendant's gross income in 1968 would have been shown on his income tax return as approximately $14,800. After the payment of taxes defendant would have an income of approximately $11,600. Cash would subsequently be received on these accounts, however, but no further tax would be payable thereon.

■■■ An award of alimony may be increased or diminished as the changed circumstances of the parties warrant. *Canady v. Canady*, 30 Ill.2d 440, 197 N.E.2d 42; *Byerly v. Byerly*, 363 Ill. 517, 2 N.E.2d 898. As hereinbefore set forth the alimony award set by the divorce decree was based on defendant's economic position with reference to several factors, one of which was his average net income. The court determined the defendant's income position by computing an average income from 1962 through 1966. In 1962 defendant had a net income of $11,678, in 1963 $15,897, in 1964 $53,893, in 1965 $43,806, and in 1966 $21,563. His income for each of those five years fluctuated greatly and the court's use of average income for determination of his alimony obligation was therefore entirely proper. While the evidence shows that the defendant's average net income for 1967 and 1968 is $6000 less than that relied upon by the court, the value of his securities increased by $20,000 and the value of the land, building and machinery remained the same. Defendant's overall economic position as determined by the divorce decree has not changed substantially.

Defendant contends that he has been forced to invade business capital in order to comply with the provisions of the divorce decree and that unles his alimony obligation is reduced, he will be unable to continue business operations. The record reveals that defendant withdrew approximately $39,000 from the business in 1968. He testified that these withdrawals were necessary to pay the expenses incurred in litigating the

divorce. Those expenses were $16,500 for the plaintiff's attorneys' fees, $15,000 alimony, $5000 to $6000 for his attorneys' fees and $2000 to $3000 for "deposition, court costs, survey costs of the shop and stuff like that."

■■ The power of courts to modify an alimony decree is limited to application for change founded on circumstances which postdate the original decree, the latter being deemed *res judicata* between the parties as to circumstances at the time of its entry. *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300; *Eggemeyer v. Eggemeyer*, 86 Ill.App.2d 224, 229 N.E.2d 144; *San Fillippo v. San Fillippo*, 340 Ill.App. 353, 92 N.E.2d 201. In the instant case the trial court considered and took into account the defendant's litigation expenses. In fact the divorce decree specifically established his alimony obligations as well as his obligation to pay plaintiff's attorneys' fees. Defendant chose not to appeal the terms set by the decree. As stated in *Cole v. Cole*, 142 Ill. 19, at p. 24:

"The parties had their day in court, with the right of appeal if the decree was deemed erroneous, and it cannot be supposed that it was intended that the court should sit in review of its own decrees, or that the same or some succeeding chancellor presiding in the same court should, after the lapse of indefinite time, have power to reverse, alter or modify a decree for alimony upon the facts existing at the time of its entry."

By paying the charges arising from the divorce, the defendant merely reduced both liabilities and assets in identical amounts and thereby effected no change in his net economic worth at the time the decree was entered. Defendant's withdrawals of capital for expenses of litigation do not constitute a change in circumstances subsequent to the divorce decree which would support modification of the original alimony award.

To vary an ancient apothegm, "Litigation hath no fury like a contested divorce." The trial court could well have felt that the defendant, after the divorce decree was entered, set about to find ways to present an appearance of changed economic circumstances. The record shows that although the defendant testified that his personal expenses had not changed since the entry of the decree, he does not fully account for more than $87,000 in capital and income during 1967 and 1968 and that he left untouched capital appreciation of approximately $20,000 in securities. These facts do not reveal an impoverished defendant oppressed by an obligation to support his divorced wife from dwindling financial resources.

■■ The party seeking a reduction in alimony has the burden of establishing his right thereto. *Vail v. Vail*, 98 Ill.App.2d 234, 240 N.E.2d 519; *Igney v. Igney*, 303 Ill.App. 563, 25 N.E.2d 608. Determination of

that issue rests in the sound discretion of the trial court and we discern no abuse of that discretion in the instant case. The judgment of the trial court is affirmed.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.